In re Peter M. & Cynthia L. CONSTANTINO, Debtor(s).

NORWEST PLUMBING & HEATING, Plaintiff,

v.

Peter M. CONSTANTINO, Defendant.

Bankruptcy No. 86–0075.
Related Case No. 86–00005.

United States Bankruptcy Court, N.D. Ohio, W.D.

March 12, 1987.

Kenneth Baker, Toledo, Ohio, for plaintiff.

Louis J. Hattner, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, District Judge.

This cause comes before the Court after Trial on Plaintiff's Complaint For Judgment and to Determine the Dischargeability of a Debt. Discovery was conducted prior to Trial, and both parties have submitted trial briefs in support of their positions. The Plaintiff and Defendant have had the opportunity to put forth their arguments and call witnesses during these proceedings. The Court has reviewed the briefs, the testimony of the witnesses, and the entire record in this case. Based upon that review, and for the following reasons,

the Plaintiff is awarded Judgment in the sum of $6,536.99, with $4,532.99 of such Judgment to be non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

## FACTS

The facts in this case, until the transactions and events beginning on November 25, 1985, do not appear to be in serious dispute. The Debtor, Peter M. Constantino, was a plumbing contractor, doing rough and finished plumbing under the name "Constantino Plumbing Contractors". In the course of this business, the Defendant-Debtor purchased a substantial amount of plumbing supplies from the Plaintiff, Norwest Plumbing & Heating Supply Co.

In August of 1985, the Debtor entered into an agreement with Avery-Heinl Co. to do rough plumbing work on a development project known, at that time, as Belmont Condominiums. The contract called for the Debtor to invoice Avery-Heinl separately for each multi-family building in the project. To prevent confusion with a second project with a similar name, the Debtor opened a separate "job account" with Norwest for the purchases which would be used in the Belmont Condominiums. The Debtor bought substantially all of the plumbing materials he used in the project from Norwest.

On October 24, 1985, the Debtor submitted an invoice to Avery-Heinl for a draw payment of $10,860.00 for work done on Building No. 3 of the project. At some time after the invoice was received, a representative of Avery-Heinl told the Debtor that he must provide waivers of lien from his materialmen, evidencing that he had paid them for materials used on the project. Without the waivers, Avery-Heinl would not make any more payments. Mr. Constantino agreed to provide the waivers, but first needed the $10,860.00 payment.

Both parties agree that on November 25, 1985, Mr. Constantino called Mr. Conyngham, the branch manager of Norwest. Mr. Constantino asked Mr. Conyngham for waivers of lien on buildings one (1) through five (5) in the Belmont project. Mr. Constantino explained to Mr. Conyngham that he needed the waivers if he was going to get paid by Avery-Heinl.

Most of the conflicting testimony was given regarding what was said during the phone conversation on the 25th. Mr. Conyngham testified that Mr. Constantino told him, during the phone conversation, that any materials which were purchased after October 31, 1985, would be used on buildings other than the five buildings upon which he was requesting waivers of lien. Mr. Conyngham stated that he agreed to waive the liens based on the Defendant's assurance that the lien rights would continue to exist on the materials supplied subsequent to the waivers. Mr. Conyngham also asserted that Mr. Constantino dictated the addresses of the five buildings during the phone conversation and, further, promised to pay the balance due in return for the waivers.

Mr. Constantino testified that he did not tell Mr. Conyngham that the materials purchased after October 31 would be used in other buildings. Mr. Constantino claims he asked, during the phone conversation, if he was "clean on the job", meaning paid in full for the units completed. The units which were completed at that time being buildings one (1) through three (3). He testified that Mr. Conyngham said "yes" they were paid on the account. It is unclear whether Mr. Constantino meant that the account would be "clean" after the payment of the October invoice, or whether it was clean at the time of the phone conversation.

The check from Avery-Heinl to Constantino Contractors, for the $10,860.00, was dated November 26, 1985. The check was for work on Building No. 3 of the Belmont project.

On November 27, 1985, an employee of Mr. Constantino went to Mr. Conyngham's office to pick up the waivers of lien. Mr. Conyngham was unsure how to phrase the waiver, so the employee suggested that the waiver state: "Potable Water and DWV Lines Rough Plumbing Materials". This language was used in all five waivers, there being one for each building. Mr. Conyngham testified he then received a

check for the October 31st balance due of $9,110.14. Mr. Constantino testified that he wrote the check on November 21, but did not know when Mr. Conyngham received it. Both men knew that the check did not cover the purchases made in November by Mr. Constantino. It should be noted that Mr. Conyngham testified that he had personally taken some of the orders from Constantino Construction during November.

A majority of the purchases made by Constantino Construction from Norwest, during November and December, were apparently bathtubs and plumbing items for bathtub installation. The copies of the order forms offered by the Plaintiff as evidence of the purchases are, for the most part, unreadable.

On December 11, 1985, Mr. Constantino went to Avery-Heinl and presented the waivers of lien from Norwest. He also signed an Affidavit, prepared by Avery-Heinl, stating that there was no money due and owing to Norwest for materials supplied for the first five buildings. At that time, Mr. Constantino received a check for buildings four (4) and five (5) in the amount of $13,032.00. Mr. Constantino did not apply any of this money to the balance due on the job account.

Mr. Constantino testified that money was being withheld by Avery-Heinl, for the bathtubs at the rate of $114 per unit. This money was for the "finish" plumbing on the bathtubs. It appears from Mr. Constantino's testimony that some time needed to pass between the "rough" and "finish" stages of the plumbing job. Mr. Constantino testified that Mr. Conyngham was aware that he was being "shorted" until the finish plumbing could be completed. However, no finish plumbing was done on the project by Mr. Constantino. Mr. Constantino also stated that the language of the waivers did not include the term "bathtub" for the Plaintiff's own protection. When asked if he thought the wording of the waivers continued to allow Norwest the right to place a lien on the bathtubs, Mr. Constantino stated that he did really not know.

It should be noted that Mr. Constantino's main account was put on a C.O.D. basis by Norwest at some point during the above transactions. The amount due to Norwest was approximately $65,000.00.

On January 3, 1986, Mr. Constantino, and his wife, Cynthia L. Constantino, filed for bankruptcy under 11 U.S.C. Chapter 7. On January 10, 1986, Mr. Conyngham placed a mechanics lien on the Avery-Heinl project for the unpaid balance on the job account. Mr. Conyngham testified that he later inspected the project, including building six (6), and did not find any materials supplied by Norwest except in the buildings upon which waivers had been given. This Adversary action was filed April 4, 1986, seeking a judgment for the unpaid balance due on the job account and a determination that the amount owed is nondischargeable under 523(a)(2)(A).

## LAW

The provisions of 11 U.S.C. Section 523(a)(2) state in pertinent part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt— ...

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...

In order to demonstrate fraud or a false representation for purposes of Section 523(a)(2), a plaintiff must prove: 1) that the defendant made a representation, 2) that the defendant knew the representation to be false, 3) that it was made with the intent to deceive, 4) that the plaintiff reasonably relied on the representation, and, 5) that a loss was sustained as a result of the reliance. *In re Benson,* 33 B.R. 572 (Bankr.N.D.Ohio 1983).

Further, a creditor seeking an exception from the Debtor's discharge under 523(a)(2) must sustain the burden of proof by clear and convincing evidence. *In re Phillips,* 804 F.2d 930, 932 (6th Cir.1986).

If there is room for an inference of honest intent, the question of fraud must be resolved in favor of the Debtor. *In re Mettetal*, 41 B.R. 80, 87 (Bankr.E.D.Tenn.1984).

██ The United States Court of Appeals for the 6th Circuit recently examined the requirement that reliance be "reasonable". The Court adopted the definition put forth in *In re Garman*, 643 F.2d 1252, 1256 (7th Cir.1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981):

...reasonableness is circumstantial evidence of actual reliance; that is, dischargeability shall not be denied where a creditor's claimed 'reliance'...would be so unreasonable as not to be actual reliance at all.

*In re Phillips*, 804 F.2d at 933.

The Court of Appeals goes on to emphasize that it is the "honest citizen" who was intended to be relieved from the burden of hopeless insolvency. The reasonableness requirement is, therefore, directed primarily at disqualifying creditors acting in bad faith. *In re Phillips* at 933. In determining whether conduct was reasonable, the Court must evaluate all the facts and circumstances of the case. *Id.* at 933.

Under the former criteria used to determine if reliance was reasonable, the case at bar would have been difficult for the Plaintiff to assert. The standard of reasonableness used in this Court was "that degree of care which would be exercised in an average business transaction by parties under similar circumstances." *In re Kleinoeder*, 56 B.R. 77 (Bankr.N.D.Ohio 1985). In the matter before the Court, there were some warning signs, or "red flags", showing that the Defendant was in financial difficulty. Moreover, the Plaintiff did nothing to check up on the Defendant's oral representations, even though it was admitted that invoices were available, and the building site had been visited by Mr. Conyngham on other occasions. The Plaintiff relied, totally and completely, on the phone call from Mr. Constantino, who, it appears, was on a C.O.D. basis with Norwest because he owed approximately $65,000.00.

Nevertheless, under *Phillips*, it cannot be said that the creditor, Norwest, acted in "bad faith" or that there was not "actual reliance". In fact, it appears that much of the business done by the parties to this suit was conducted on a similar basis. It is not difficult to conclude that more care should have been taken when waivers of lien were requested by Mr. Constantino, but it is not difficult to believe that the parties conducted the waiver transaction as they did most of their other business—over the telephone. Consequently, the Court finds that any reliance by Norwest was reasonable under the *Phillips* standard.

The Court finds that the Defendant did knowingly make false representations, that they were made with intent to deceive, and that the Plaintiff did rely on those representations. As a result, a loss was sustained by the Plaintiff. The misrepresentations of the Plaintiff resulted in the Defendant giving waivers of lien for "Potable Water and DWV Lines Rough Plumbing Materials". Although Mr. Constantino testified that he did only "rough plumbing" on the Belmont project, the Court does not find that all materials used by Mr. Constantino were "rough plumbing materials". Such an interpretation would be too formal and legalistic for the transactions involved in this case. It appears that bathtubs can reasonably be viewed as something different, and something possibly outside what Mr. Constantino believed to be the scope of the waiver.

██ As the standard of proof for nondischargeability is one of "clear and convincing evidence", under which doubts are to be resolved in favor of the Debtor, thé portion of the job account attributable to bathtubs is found to be dischargeable. There are two reasons for this holding. First, there is some doubt, small but not insubstantial, that Mr. Constantino intended the waivers of lien to extend to bathtubs. Second, it is possible that Mr. Constantino may have intended to pay for the bathtubs with the funds from the finished plumbing work, which, he testified, he was under contract to complete.

The same reasoning does not render the other materials charged to the job account

dischargeable. There are two reasons for this holding. First, the waiver of lien would appear to plainly cover the water lines to the bathtubs and other associated plumbing items. There seems to be no room for misunderstanding or mistake on these items, based on the evidence before the Court. Second, Mr. Constantino's testimony regarding the amount of income he expected to receive for the finished plumbing work does not support any inference that the entire job account could be paid from the proceeds. Therefore, the remainder of the debt is nondischargeable under 523(a)(2)(A).

■ In setting the amount of debt which is nondischargeable the Court must rely on Mr. Constantino's testimony that he was charged $167.00 for each bathtub. The order forms would be the preferred source of this information, but, as noted earlier, they are unreadable. Twelve bathtubs were delivered during November and December. The total amount for bathtubs, then, would be $2,004.00, out of a total amount due on the job account of $6,536.99.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Plaintiff is awarded Judgment in the amount of $6,536.99, and

It is FURTHER ORDERED that $4,532.99 of the above Judgment is held to be nondischargeable under 523(a)(2)(A).