In re William J. CLEMENS and
Lindell S. Clemens, Debtors.

Vincent L. BARKER, et al., Plaintiffs,

v.

William J. CLEMENS, Defendant.

Bankruptcy No. 86–00703.
Adv. No. 86–0170.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Jan. 28, 1988.

Steven R. Smith, William M. Connelly, Toledo, Ohio, for plaintiffs.

Jamille G. Jamra, John P. Gouttiere, Toledo, Ohio, for debtor/defendant.

Suzanne C. Mandross, Toledo, Ohio, Trustee.

## OPINION AND ORDER GRANTING DISCHARGE AND DETERMINING DEBT TO BE DISCHARGEABLE

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter came on for trial upon plaintiffs' complaint objecting to discharge of Debtor/defendant, discharge of certain debts and for affirmative relief. Upon consideration of the evidence adduced at the trial, the stipulations and briefs of the parties, the court finds that plaintiffs' complaint should be dismissed with prejudice.

### FACTS

On April 9, 1986, Debtor/defendant filed a joint petition, with his wife, under chapter 7 of the Bankruptcy Code. On July 1, 1986, Vincent L. Barker, Jr. and John C. Purdue filed their complaint, individually and as partners of Fraser, Barker, Purdue & Clemens (hereinafter FBPC), objecting to discharge of Debtor/defendant, discharge of certain debts and for affirmative relief. A substituted complaint was subsequently filed on January 30, 1987, substituting John C. Purdue Company, Legal Professional Association, individually and as a partner of FBPC for John C. Purdue individually and as a partner of FBPC. Plaintiffs, Debtor and a fourth individual, Mr. Donald R. Fraser, were partners of the law firm of FBPC. A written partnership agreement, dated July 1, 1982, was executed by these partners on January 12, 1984. See Plaintiff's Exhibit 6.

During the existence of FBPC, each partner could, individually, authorize the issuance of a check drawn upon the partnership account. Stipulations of Fact at 2 (hereinafter Stipulations). Accordingly, each partner could authorize the payment of personal expenses from partnership funds, charging the expenses against his drawing account. Stipulations at 4. A

partner's drawing account also represented advances of partnership funds on behalf of a client for which the partner was responsible. Stipulations at 4.

The partners of FBPC agreed to terminate the partnership relationship in July, 1984. See Plaintiff's Exhibits 5 and 12. Mr. Richard MacMillan, an attorney formerly employed by FBPC, testified that Debtor requested a meeting of all personnel early in the week preceeding July 21, 1984 (this date reflects Mr. MacMillan's anniversary, thus, facilitating his recollection). Debtor, at that meeting, announced the "break-up" of FBPC. Mr. MacMillan further recalled that Debtor stated that the firm would continue through the calendar year. On November 2, 1984, plaintiffs physically left the partnership premises and commenced practicing with a different law firm. Stipulations at 2. Debtor and the fourth partner, Mr. Fraser, continued practicing at that same locale.

From October 11, 1984, through December 5, 1984, Debtor caused checks to be issued from FBPC to the account of Travel Control Systems, Inc. (hereinafter TC), a client of the partnership, totaling $53,-053.06. Stipulations at 4; Post–Trial Briefs of Plaintiffs at 2–3. It is this debt to which plaintiffs object. Post–Trial Brief of Plaintiffs at 20.

### DISCUSSION

Before discussing the substantive allegations of plaintiffs' complaint, the court will address Debtor's repeated allegation that plaintiffs lack standing to assert their claims. Debtor contends that plaintiffs are not creditors of Debtor as the partnership is his creditor. Debtor lists the partnership as a creditor having an unsecured claim without priority. See Schedule A–3. Debtor contends that because §§ 523 and 727 permit a "creditor" to request a hearing to determine the dischargeability of a debt and to determine whether grounds exist for denial of discharge, only the partnership may bring this cause of action.

■ "Creditor" refers to an "entity that has a claim against the debtor." 11 U.S.C. § 101(9). " 'Entity' includes person, estate,

trust, governmental unit, and United States trustee." 11 U.S.C. § 101(14). "Person" includes a partnership. 11 U.S.C. § 101(35). O.R.C. § 1775.05(A) defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." Plaintiffs' complaint is brought by plaintiff Vincent L. Barker, Jr., individually and as a partner of the partnership, and by plaintiff John C. Purdue Company, individually and as a partner of FBPC. Because plaintiffs were co-owners of the business with Debtor, they are entitled to bring this action on behalf of the partnership.

■ Count I of plaintiffs' substituted complaint seeks relief pursuant to 11 U.S.C. § 727(c) which permits plaintiffs, as creditors, to object to Debtor's discharge. Plaintiffs first allege that Debtor has "failed to explain satisfactorily any losses of assets or deficiency of assets to meet their liabilities." Plaintiffs' Substituted Complaint at 3. See 11 U.S.C. § 727(a)(5).

At the outset, the court notes that plaintiffs have the burden of proving their objection. Bankruptcy Rule 4005. That is, plaintiffs must initially provide evidence of the "disappearance of substantial assets or of unusual transactions." 4 Collier on Bankruptcy ¶ 727.08, at 727–72 (15th ed. 1987). Furthermore, plaintiff must carry their burden on each element of their objection by clear and convincing evidence as congressional policy favors the granting of Debtors' discharge unless one of the enumerated conditions exist. See Matter of Van Horne, 823 F.2d 1285, 1287 (8th Cir. 1987) (creditors must prove each element of their claim by clear and convincing evidence) (additionally, the statute should be construed liberally in favor of debtor against the creditor thus effectuating the fresh start policy of the code); Matter of Boyle, 819 F.2d 583, 587 (5th Cir.1987) (bankruptcy law favors allowing debtor to discharge debts and to make a fresh start); In Re Constantino, 72 B.R. 231, 234–35 (Bkrtcy.N.D.Ohio 1987) (standard of proof for nondischargeability is one of clear and convincing evidence under which doubts are to be resolved in favor of debtor); Matter of Michel, 74 B.R. 80, 84 (Bkrtcy.N.D.

Ohio 1985) (state is to be construed liberally in favor of debtor as any other construction would be inconsistent with the liberal spirit that has always pervaded the bankruptcy system). If plaintiffs carry this burden, Debtor must then "explain satisfactorily" the loss or transaction.

> Although precisely what constitutes a satisfactory explanation has not been definitively stated, it is clear that the debtor must explain his or her losses in such a manner as to convince the court of good faith.

*In Re Hendren,* 51 B.R. 781, 788 (Bankrtcy.E.D.Tenn.1985) (citation omitted). *See also In Re Chalik,* 748 F.2d 616 (11th Cir.1984) (the explanation must convince the judge). The determination of whether defendant has satisfactorily explained the transaction is a question of fact for this court. *Chalik,* 748 F.2d at 619.

■ Upon review of the exhibits and testimony in this proceeding, it is evident that all partners were allowed to charge against their drawing account monies constituting wages for their legal services, monies representing client advances and monies in payment of personal obligations. A partner's drawing account would be credited with funds received from a client representing payment of that partner's services rendered and reimbursement for client advances. The partner would be personally obligated on any deficiency. *See* Defendant's Second Supplemental Pretrial Brief at 2.

Plaintiffs allege that Debtor authorized the issuance of checks drawn on partnership funds to TC in pursuit of Debtor's personal business ventures. Debtor explained that these checks constituted client advances and that firm policy permitted this issuance. That is, Debtor contends that plaintiffs made similar draws upon partnership funds.

Plaintiff Barker testified that he authorized the issuance of checks in payment of his quarterly income taxes, country club dues and racquetball dues. See Defendant's Exhibit U. Plaintiff Barker also stated that he did not customarily seek approval of his partners prior to authorizing a check in payment of client advances. He also testified that he may have received a draw against his account representing monies in payment of his wages at a time when his account had a negative balance.

Plaintiff Purdue testified that his drawing account was in a negative posture during most of his time with the partnership. Plaintiff Purdue testified that in 1982 his drawing account reflected a negative balance as the client for which he was working, Gershon Meckler, required a lot of patent work which could not be postponed. Gershon Meckler, however, was without funds to pay for plaintiff Purdue's services. Due to the urgency of and necessity for Meckler's patent work, plaintiff Purdue advanced monies on behalf of Meckler. In fact, plaintiff Purdue's drawing account reflected a negative balance, ranging from $40,262.63 in September, 1983, to $1,225.90 in January, 1984, throughout 1982, 1983 and much of 1984. See Defendant's Exhibit A (a copy of which is also attached to the stipulations). In fact, when plaintiff Purdue was asked if in September, 1984 Meckler was indebted to plaintiff Purdue or the partnership in excess of $130,000, plaintiff Purdue indicated that although this amount was approximately correct, he could not recall the exact amount. He stated, however, that the debt was "sizeable."

Plaintiff Purdue explained that after the July 1984 partnership meeting, in which the partners agreed to terminate the partnership, plaintiff Purdue contacted Meckler and explained that unless payment of the outstanding statement for services was not received, plaintiff Purdue would cease representing Meckler. Meckler arranged for funds and made payment in October, 1984. Plaintiff Purdue's drawing account reflected a positive balance in November, 1984 for the first time since December, 1981. See Defendant's Exhibit A. Additionally, in order to fully discharge this debt, plaintiff Purdue took a 10% interest in Meckler's patents.

Lastly, plaintiff Purdue testified that he issued a check payable to himself in the amount of $12,000 drawn on the partnership account, representing a loan on Sep-

tember 16, 1982. See Defendant's Exhibit N. Plaintiff Purdue stated that while his drawing account reflected a negative balance of $13,267.73 for that month, the $12,000 loan was not included in that figure. *See also* Defendant's Post–Trial Brief at 29–30.

Debtor's advancement of partnership funds for personal or business reasons does not appear unusual when considered in light of the other partners' advances. Debtor advanced monies on behalf of TC in the same fashion as plaintiff Purdue advanced funds on behalf of his client. Plaintiffs allege that Debtor was financially involved with TC. Post–Trial Brief of Plaintiffs at 3–4. Debtor admits that he purchased an interest in TC in 1985. In fact, Debtor issued a check on April 17, 1985 payable to TC in the amount of $3,300 drawn on Debtor's personal bank account. See Defendant's Exhibit C. This transaction is similar to plaintiff Purdue's dealings with Meckler. Therefore, Debtor appears not to have engaged in "unusual transactions." *See Collier on Bankruptcy supra.* Furthermore, the court finds Debtor's explanation satisfactory. Plaintiffs have, then, failed to carry the burden of proving their objection based on 11 U.S.C. § 727(a)(5).

Count I of plaintiffs' substituted complaint also states that plaintiffs object to Debtor's discharge for the reasons that he has "transferred, removed, destroyed, sold or concealed, or permitted to be removed, destroyed, sold or concealed, their property with intent to hinder, delay or defraud." Substituted Complaint at 3. *See* 11 U.S.C. § 727(a)(2). The relevant time frame is set forth in subsection (A) and provides that the transaction involved "property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). To sustain this objection, plaintiffs must demonstrate:

(1) that the action complained of was done at a time subsequent to one year before the date of the filing of the petition;

(2) with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code;

(3) that the act was that of the debtor or his duly authorized agent;

(4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done. (footnote omitted)

\* \* \* \* \* \*

If the proof is insufficient on any one of these essential elements, the objection to discharge cannot be sustained.

*In Re Hooper,* 39 B.R. 324, 326–27 (Bkrtcy. N.D.Ohio 1984) (citations omitted).

Plaintiffs state that "[t]he cash advances that are the subject of this lawsuit were incurred in late October, and in November and December, 1984." Post–Trial Brief of Plaintiffs at 6. Debtor filed his petition on April 9, 1986. Therefore, the acts complained of were not done at a time subsequent to one year before the petition. (No allegations or evidence concerning a transaction involving property of the estate has been presented. *See* 11 U.S.C. § 727(a)(2)(B).) Additionally, plaintiffs must prove that Debtor actually intended to hinder, delay or defraud his creditors; constructive intent is not sufficient. *Lovell v. Mixon,* 719 F.2d 1373, 1376–77 (8th Cir. 1983). *See also Matter of Reed,* 700 F.2d 986 (5th Cir.1983).

Debtor, from July, 1982 through October, 1984, acted as office manager of the partnership and received compensation for this position. See Stipulations at 2. In that capacity, Debtor was in charge of producing the partnership's monthly financial reports. See Defendant's Exhibits 0–83, 0–84 and 0–85. These reports reflected total monthly income and expenses as well as each partner's income and expenses. Plaintiff Barker testified that he received all 1984 and 1985 monthly financial reports and that his routine was to review the first page which reflects a compilation of the partnership's assets and liabilities. The succeeding pages included information regarding the individual partner's credits and debits. Plaintiff Purdue also testified that he received these reports and that his rou-

tine was to review the overall partnership condition and then his individual credits and debits.

The 1984 reports for the months of October, November and December, the months in which Debtor authorized the issuance of the checks in issue, evidence Debtor's negative drawing account balance for those three months. Furthermore, the December report indicates that Debtor's drawing account balance for that year was a negative $63,693.05. The court also notes that the November and December checks listed in the stipulations about which plaintiffs complain are listed on the partnership ledger, excepting the Toledo Trust Company check dated December 14, 1984 in the amount of $422.55. See Defendant's Exhibit HH. As testimony indicated, this information was available to all partners. See Discussion *infra* at 950. Based upon Debtor's open and full disclosure of his drawing account the court finds that Debtor lacked the requisite intent to hinder, delay or defraud plaintiffs. Plaintiffs have failed to carry their burden of proof on the essential elements of § 727(a)(2). Therefore, count I of plaintiffs' substituted complaint should be dismissed.

■ Count II of plaintiffs' substituted complaint states that Debtor's debts to FBPC are not dischargeable for the reason that "said debt constitutes the obtaining of money, property, services or an extension of credit by false pretenses and actual fraud." Substituted Complaint at 4. Plaintiffs, therefore, seek an exception to discharge pursuant to 11 U.S.C. § 523(a)(2)(A). In proving this allegation, plaintiffs must show:

1) that the debtor made a representation to the plaintiff,

2) that he knew the representation was false,

3) that it was made with the intent to deceive,

4) that the plaintiff relied on the representation, and

5) that the plaintiff suffered a loss as a result of the representation.

*In Re Saunders,* 37 B.R. 766, 768 (Bkrtcy. N.D.Ohio 1984) (citations omitted). *See* *also Matter of Van Horne,* 823 F.2d 1285 (8th Cir.1987); *In Re Phillips,* 804 F.2d 930 (6th Cir.1986). Furthermore, "[i]f there is room for an inference of honest intent, the question of fraud must be resolved in favor of the debtor." *Constantino,* 72 B.R. at 235 (citation omitted). *See also Phillips,* 804 F.2d at 933 (congressional intent of bankruptcy code is to relieve honest debtor of his insolvency).

Plaintiffs complain that Debtor represented the payments to TC as cash advances. However, plaintiffs have failed to carry their burden by clear and convincing evidence that such representation was false or that it was made by Debtor with intent to deceive. Although plaintiffs relied on Debtor's representation, plaintiffs did nothing to verify Debtor's representations, even though all the partnership accounting records were available to them and even though plaintiffs testified that they were in receipt of all monthly financial reports. Ms. Kathy Merritt, an accountant formerly employed by the partnership, testified that the partnership books and records were available for review by all partners. She further opined that plaintiff Barker inquired about the financial status of the firm "maybe once in awhile" and that plaintiff Purdue inquired "very rare." In evaluating plaintiffs' reliance on Debtor's representation, the court must evaluate the reasonableness of that reliance. That is

... the critical factor in evaluating cases involving the issue of reasonable reliance under § 523(a)(2)(A) is to accord 'a construction of the [Bankruptcy Act that] is consonant with equity, and consistent with the object and intention of Congress in enacting a general law by which the honest citizen may be relieved from the burden of hopeless insolvency.'

*Phillips,* 804 F.2d at 933 (citations omitted). Additionally, no evidence exists demonstrating that Debtor was insolvent at the time of the cash advances or that Debtor advanced these monies in contemplation of bankruptcy. See discussion *infra* at 952. Based upon Debtor's lack of intent to deceive, the availability of the partnership financial records, and the lack of plaintiffs'

attention thereto, the court finds that plaintiffs have failed to sustain their burden of proof on this issue. Therefore, count II of plaintiffs' complaint alleging an exception to discharge pursuant to 11 U.S.C. § 523(a)(2)(A) should be dismissed.

■ Count II of plaintiffs' substituted complaint also requests that the debt in issue be determined to be nondischargeable because "said debt constitutes a debt procured by fraud while acting in a fiduciary capacity." Substituted Complaint at 4. This count is brought, then, pursuant to 11 U.S.C. § 523(a)(4). As previously discussed, the fraud contemplated by § 523 is actual fraud. *See* discussion *supra* at 948. Any doubts regarding Debtor's intent must be resolved in favor of Debtor. *Id.* Also, as previously discussed, the court is not persuaded that Debtor had the requisite intent to deceive. *Id.*

■ Section 523(a)(4) also provides that a debt procured by fraud or defalcation while acting in a fiduciary capacity will be excepted from discharge. Although the definition of "fiduciary" is a question of federal law, "state law can be consulted to determine when a trust exists." *In Re Short,* 818 F.2d 693, 695 (9th Cir.1987) (citation omitted). *See also Matter of Boyle,* 819 F.2d 583, 592 (5th Cir.1987) ("fiduciary" is a question of federal law) (citation omitted). Plaintiffs contend that O.R.C. § 1775.20(A) imposes a fiduciary duty upon a partner who uses partnership property. Post–Trial Brief of Plaintiffs at 17. Specifically, that section provides:

> (A) Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

■ "Fiduciary" as used in § 523(a)(4), "applies only to express or technical trusts and does not extend to implied trusts which are imposed on transactions by operation of law as matter of equity." *In Re Johnson,* 691 F.2d 249, 251 (6th Cir.1982) (citation omitted) (discussing parallel section of Bankruptcy Act). Additionally, O.R.C.

§ 1775.20 "does no more than enunciate the fiduciary character of the partnership relationship, from formation through liquidation, the breach of which may be the basis of a constructive trust." *Peterson v. Teodosio,* 34 Ohio St.2d 161, 171, 297 N.E. 2d 113 (1973) (citation omitted). *See also Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) (statute refers to technical trust relationship, not relationship implied from contract); *Matter of Boyle,* 819 F.2d 583 (5th Cir. 1987) (Texas construction fund statute does not create a trust cognizable for nondischargeability exception); *In Re Short,* 818 F.2d 693 (9th Cir.1987) (Debtor must have been a trustee before the act of wrongdoing and not a trustee *ex maleficio* ); *Matter of Dloogoff,* 600 F.2d 166 (8th Cir.1979) (Nebraska construction statute does not create an express trust).

■ Because the court finds that Debtor lacked the requisite intent to deceive, that Debtor was not acting in a fiduciary capacity, and that Debtor adequately accounted to plaintiffs, count II of plaintiffs' complaint should be dismissed.

Section 523(a)(4) also excepts the discharge of a debt procured by embezzlement or larceny.

> Larceny may be defined as the fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use without the consent of the owner and with intent permanently to deprive the owner of such property.
>
> \* \* \* \* \* \*
>
> Embezzlement, on the other hand, is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.
>
> \* \* \* \* \* \*
>
> The next hurdle to be surmounted by the plaintiff is the demonstration, again by a clear and convincing margin, that the debtor's eventual misappropriation of the property was motivated by a fraudulent intent....

*Matter of Michel,* 74 B.R. 80, 86 (Bkrtcy.N. D.Ohio 1985) (citations omitted). Again, the court is not convinced that Debtor had

the requisite intent for this finding. Count II of plaintiffs' substituted complaint should be dismissed.

■ Count III of plaintiffs' substituted complaint states that Debtor's actions "were intentional, willful and constitute fraud upon plaintiffs." Substituted complaint at 5. Section 523(a)(6) mandates that Debtor must act willfully and maliciously. Not only does the court find that Debtor did not willfully intend to defraud plaintiffs, but the court is also not persuaded that Debtor acted maliciously. Debtor believed his authorization of the checks in issue was in compliance with the partnership policy. The court accepts Debtor's plausible explanation.

■ Plaintiffs also complain of Debtor's use of partnership funds to make payments on behalf of TC as a result of Guarantees by C & S Supplies, Inc. and Time–Travel, Inc. See Post–Trial Brief of Plaintiffs at 5; Plaintiff's Exhibit 11. C & S Supplies, Inc. was a corporation of which Debtor's father was the sole shareholder and of which Debtor was secretary. Time–Travel, Inc. was a corporation in which Debtor held a ⅓ interest. Acting on behalf of C & S Supplies, Inc. and Time–Travel, Inc., Debtor guaranteed TC's obligations to third parties pursuant to a purchase agreement. Plaintiff's Exhibit 11. The checks about which plaintiffs complain represent payments in fulfillment of this guarantee. That is, partnership funds were used to pay TC's obligations as a result of C & S Supplies, Inc. and Time–Travel, Inc.'s guarantee to the third party.

Again, the court is not convinced that Debtor's use of partnership funds was inappropriate when compared to plaintiffs' use. Like plaintiffs, Debtor utilized partnership funds for personal purposes. Additionally, there exists no evidence that Debtor advanced these monies in contemplation of bankruptcy. The last check about which plaintiffs complain was issued December 31, 1984. Debtor filed his petition on April 9, 1986, fifteen months later. Furthermore, Debtor's financial statement of March 31, 1985 indicates that Debtor's net worth was approximately $376,000. See Defendant's Exhibit S. Although this amount does not reflect the amounts guar-

anteed by C & S Supplies, Inc. and Time–Travel, Inc. described above, Debtor appears to have been solvent as of that date. Because Debtor was solvent, because Debtor appears not to have engaged in unusual transactions and because Debtor lacked the intent to deceive plaintiffs, plaintiffs' complaint should be dismissed.

Plaintiffs also state that partnership funds were loaned to C & S Supplies, Inc. The document evidencing this arrangement was signed by Mr. Donald R. Fraser on behalf of the partnership. See Plaintiff's Exhibit 10. C & S Supplies was a corporation of which all partners were aware from the origination of the partnership as Debtor listed this company as a "Personal Service Exception" to the partnership agreement, indicating that Debtor had an interest in this company. See Plaintiff's Exhibit 6, Appendix A. Therefore, plaintiffs were aware of Debtor's involvement with that company. Furthermore, Debtor testified that C & S Supplies had repaid all its obligations to the partnership. See Exhibit GG.

Plaintiffs, in their post-trial brief, cite §§ 727(a)(3) and (4) in support of their objection to discharge. Although plaintiffs may amend their pleadings to conform to the evidence at trial, the record does not reflect such a motion. See Fed.R.Civ.P. 15(b). The court will, however, briefly address these sections.

Subsection (3) states that a Debtor will be granted a discharge unless:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

As previously stated, the court is convinced that Debtor disclosed his authorization of issuance of the checks in issue. Additionally, no evidence regarding destruction or mutilation of partnership records has been presented.

Subsection (4) states that a Debtor will be granted a discharge unless—

the debtor knowingly or fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs....

As discussed, the court finds that Debtor has not acted fraudulently or with fraudulent intent. The record before the court does not include a false oath made by Debtor nor a false claim. The court finds subsections (C) and (D) inapplicable to the facts in this case.

In light of the foregoing, it is therefore

ORDERED that plaintiffs' substituted complaint objecting to discharge of Debtor/defendant William J. Clemens, discharge of certain debts and for affirmative relief be, and it hereby is, dismissed with prejudice.