In re Jeffrey Dale CASH, Debtor.

Jeneva L. CASH, nka McCann, Plaintiff,

v.

Jeffrey Dale CASH, Defendant.

Bankruptcy No. 89-0182.
Related No. 89-01315.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Nov. 13, 1991.

Randy L. Reeves, Lima, Ohio, for plaintiff.

Patricia White King, Lima, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on Complaint to Determine Dischargeability of Debt. At the Trial, the parties were afforded the opportunity to present the evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the exhibits, the evidence and arguments presented, as well as the entire record in this case. Based upon that review, and for the following reasons, this Court finds that the debt should be nondischargeable.

### FACTS

Jeffrey Cash [hereinafter "Cash"], Debtor/Defendant, and Jeneva Cash, nka McCann [hereinafter "McCann"], Plaintiff, were divorced in 1985. They had one child, Justin. In mid–1986, Plaintiff and Defendant began living together in an attempt to reconcile their former marriage.

In July 1986, McCann and Cash purchased a life insurance policy on McCann's daughter, Amanda K. Cash. The beneficiaries listed on the policy were McCann and Cash. They were also listed as the parents of Amanda, although Cash was not her biological father.

On August 19, 1986, Amanda died, a victim of Sudden Infant Death Syndrome. The cost of her funeral totaled One Thousand Three Hundred Fifty-one Dollars and Eighty-seven Cents ($1,351.87), plus Five Hundred Thirty-two Dollars and Seventy-eight Cents ($532.78) for a headstone marking her grave.

On September 15, 1986, Western–Southern Life Insurance Company issued a death benefits check in the amount of Ten Thousand Seventeen Dollars and Thirty-three Cents ($10,017.33), payable jointly to Cash and McCann. Both parties endorsed the check and took it to the Defendant's credit union to be cashed.

At that time, checks were issued to pay the funeral expenses and to pay for the headstone. A Five Thousand Dollar ($5,000.00) check was issued to Southside Savings and Loan as a downpayment on a house titled solely in the Defendant's name. One Thousand Dollars ($1,000.00) cash was put down at closing on the house. The remainder of the death benefits check, Two Thousand One Hundred Thirty-two Dollars and Sixty-eight Cents ($2,132.68), went to McCann.

During their attempt at reconciliation, McCann and Cash had discussed purchasing a house. They located one they wanted and used part of the proceeds from the death benefits check as a downpayment on the house. When McCann and Cash had discussed the purchase of the house, McCann believed that the house was to be purchased with the joint funds and that her name was to be on the title, too. She did not find out differently until the day of closing. Cash, on the other hand, believed that the house would be titled solely in his name and that McCann's name would be added if, and when, they remarried. Cash said that McCann was loaning the money to him to buy the property. Cash produced two receipts for personal property reflecting that McCann received Three Thousand Dollars ($3,000.00) worth of goods which Cash claimed were payments on the loan. McCann testified that she never received one of the two items which the receipt reflects she received.

In November 1986, Plaintiff and Defendant separated for the final time. McCann has demanded the repayment of her share of the death benefits check and Cash has refused to repay that amount. Cash states that McCann has received her share in cash and in personal property. McCann disagrees and claims that the debt Cash owes her is nondischargeable under Section 523(a)(2)(A) of the Bankruptcy Code.

### LAW

Section 523(a)(2)(A) of the Bankruptcy Code provides that:

> (a) A discharge ... does not discharge an individual debtor from any debt—
>
> (2) for money, property, [or] services ... to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud....

11 U.S.C. § 523(a)(2)(A).

■ To succeed in her claim, McCann must prove the following elements: (1) that Cash made false representations; (2) that at the time made, Cash knew them to be false or acted with gross recklessness as to their truth; (3) that the representations were made with the intention and purpose of deceiving McCann; (4) that McCann reasonably relied on the representations; and (5) that McCann sustained the alleged injury as a proximate result of the representation having been made. *See, In re Phillips,* 804 F.2d 930 (6th Cir.1986); *In re Martin,* 761 F.2d 1163 (6th Cir.1985); *In re Kleinoeder,* 56 B.R. 77 (N.D.Ohio 1985). McCann must sustain her burden by a preponderance of the evidence. *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). If there is room for an inference of honest intent, the question must be resolved in favor of the debtor. *In re Constantino,* 72 B.R. 231 (N.D.Ohio 1987).

■ The first issue presented before the Court is whether the Debtor made a false representation. It is this Court's opinion that he did. When Cash and McCann had discussed the purchase of the house, they decided that they would use joint funds for the purchase. Implied in that decision to purchase was the representation that both names would be on the title of the house. McCann, relying upon that representation, loaned Cash a portion of her share from the death benefits check. McCann learned that her name would not be on the title at the closing. Cash testified at Trial that he knew he was not putting McCann's name on the title at the time of purchase when he borrowed the money from her. Cash had the necessary intent required of a false representation and acted with bad faith when he deceived McCann so that she would lend her portion of the death benefits check to him.

As to damages, McCann was entitled to one-half of the death benefits check after the funeral expenses were paid. Thus, McCann was entitled to Four Thousand Sixty-six Dollars and Thirty-four Cents ($4,066.34). She received Two Thousand One Hundred Thirty-two Dollars and Sixty-eight Cents ($2,132.68), while she loaned One Thousand Nine Hundred Thirty-three Dollars and Sixty-six Cents ($1,933.66) to Cash. The amount that she loaned Cash is nondischargeable under Section 523(a)(2) of the Bankruptcy Court.

■ As to the two receipts produced at Trial, the Court believes that neither should be used to mitigate damages. The receipts do not indicate that the items given to McCann were given to reduce the debt. Additionally, McCann testified that although she signed the receipt for the stereo, she never received the stereo. There were unsubstantiated claims and conflicting testimony as to whether McCann and Cash agreed that the car and the stereo would reduce Cash's debt to McCann. This Court believes the exchange was not done to reduce the debt.

In judging the credibility of the witnesses, the Court has taken into consideration the witnesses' intelligence, age, memory, demeanor while testifying, the reasonableness of the testimony in light of all the evidence of the case, and any interest, bias, or prejudice the witnesses may have. In reaching the conclusions found herein, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that the debt in the amount of One Thousand Nine Hundred Thirty-three Dollars and Sixty-six Cents ($1,933.66) owed to Jeneva McCann by the Debtor be, and is hereby, nondischargeable.