In re Juanita J. DRUCKEMILLER,
Debtor.

VAN WERT NATIONAL
BANK, Plaintiff,

v.

Juanita J. DRUCKEMILLER, Defendant.

Bankruptcy No. 93–3312.
No. 93–32553.

United States Bankruptcy Court,
N.D. Ohio.
Western Division.

Dec. 15, 1994.

Steven Diller, Van Wert, OH, for plaintiff.

William E. Huber, St. Marys, OH, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on Plaintiff's Complaint to Determine Dischargeability of a Debt. A trial was held which the parties were afforded the opportunity to present evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the arguments of Counsel, exhibits, relevant statutory and case law, as well as the entire record. Based upon that review, and for the following reasons, the Court finds that the debt owed to the Plaintiff in the amount of Seven Thousand Three Hundred Eighteen Dollars and 39/100 ($7,318.39) is not exempted from discharge under § 523(a)(2)(A).

### FACTS

This decision and the related trial concern two related adversarial proceedings filed in two separate bankruptcy cases, those of James Joseph and Juanita J. Druckemiller (hereafter "Debtors"). It is uncontested that the both the factual and legal issues in both cases are identical, and a single trial was held to resolve both cases.

The facts discerned by the Court at trial are as follows. In May, 1994, the Debtors sought a loan of One Thousand Dollars ($1,000.00) from Van Wert National Bank (hereafter "Plaintiff"). Specifically, the Debtors approached Russ Belt (hereafter "Mr. Belt"), a loan officer of the Plaintiff, whom they knew not only on a previous lender/customer basis, but also as a friend. At the time, the Debtors already had loans with the Plaintiff and City Loan Financial Services, Inc. (hereafter "City Loan"). Mr. Belt advised the Debtors that due to the limitations on amortization of a small loan and the interest factors of the other loans, they would be better off refinancing all their loans with Plaintiff. Under this refinancing arrangement, the additional One Thousand Dollar ($1,000.00) loan could be consolidated with the previous loans. The total consolidation loan would be Seventeen Thousand Five Hundred Fifty-six and 21/100 Dollars ($17,-556.21). The result would be a monthly payment of Five Hundred Twenty-nine and 80/100 Dollars ($529.80), only a small amount greater than the monthly payment before consolidation.

The collateral for the loan was to consist of a 1980 Oldsmobile Delta 88 and a 1987 Chevrolet Camaro, which were used to secure the prior loans with Plaintiff. In addition, the Debtors agreed to give a security interest in a 1979 Ford pick-up which was collateral for the obligation to City Loan. On or around June 4, 1993, the Debtors entered into the consolidation agreement. Payments were to begin on July 19, 1993. No payments were ever made on the loan, nor was the title to the truck ever delivered. On September 2, 1993, the Debtors filed for Chapter 7 Bankruptcy. Plaintiff contends that the Debtors obtained the consolidation loans with false representations and under false pretenses.

### LAW

**11 U.S.C. § 523. Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

### DISCUSSION

The issue in this case is whether the Debtors' actions constitute false pretenses, false representations, or actual fraud so as to make Debtors' debt to Plaintiff non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Because determinations as to the dischargeability of particular debts are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I), this matter is a core proceeding.

The Plaintiff must prove five elements to succeed on its claim: (1) the Debtors made false representations, (2) the Debtors knew such representations to be false at the time they were made, (3) the representations were made with the intent to defraud

the creditor, (4) the creditor must have reasonably relied on the representations, (5) the creditor incurred resulting damage. *In re Phillips,* 804 F.2d 930, 932 (6th Cir.1986); *In re Martin,* 761 F.2d 1163, 1165 (6th Cir. 1985); *In re Triplet,* 139 B.R. 687, 689 (Bankr.N.D.Ohio 1992).

The Plaintiff argues that the Debtors obtained the consolidation loan through false representations by both promising to repay the obligation when they were financially unable to repay, and by failing to deliver the title to the 1979 Ford pick-up. The Plaintiff must sustain its burden by a preponderance of the evidence. *Grogan v. Gardner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Because it is difficult, if nearly impossible, to obtain direct proof of the Debtors' state of mind, Plaintiff may present evidence of the surrounding circumstances from which intent may be inferred. *Matter of Van Horne,* 823 F.2d 1285, 1287 (8th Cir. 1987).

■ This Court recognizes that there are several factors that indicate the Debtors may have acted fraudulently. First, there was a relatively short period of time between the date of Debtors' consolidation loan and the bankruptcy petition. Also, no payments or even partial payments were ever made on the loan. However, if there is room for an inference of honest intent, the question of non-dischargeability must be resolved in favor of the Debtors. *In re Constantino,* 72 B.R. 231 (Bankr.N.D.Ohio 1987); *In re Mettetal,* 41 B.R. 80, 87 (Bankr.E.D.Tenn. 1984).

■ The Plaintiff first contends that failing to deliver title to the Ford truck constituted a false representation. The Plaintiff must prove that at the time the Debtors promised to bring in the title, they had no intention of delivering it. A mere promise to be executed in the future is not sufficient to make a debt nondischargeable, even though there is no excuse for the subsequent breach. *In re Barker,* 14 B.R. 852, 857 (Bankr. E.D.Tenn.1981); *In re Guy,* 101 B.R. 961, 978 (Bankr.N.D.Ind.1988). Mr. Belt testified that he wrote a check to City Bank and gave it to the Debtor to deliver. Upon delivery he expected the Debtor to return with the title to the Ford pick-up. Mr. Belt did not make any attempt to remind the Debtor to bring in the title, and he had difficulty remembering the circumstances surrounding the request for the title. The Plaintiff has offered no evidence that the Debtors never intended to bring in the title to the truck or that the Debtors were insolvent at the time. Further, the delivery of the title was only necessary for the consolidation loan, about which the Debtors did not initially approach the Plaintiff. Mr. Belt testified that he authorized the loan to the Debtors because of their friendship. If Mr. Belt had truly relied on the title to the truck in order to authorize the consolidation, he could have held the funds until the title was in his possession, or had it sent directly to him. Thus, the Court concludes Plaintiff did not reasonably rely on the Debtor's delivery of the title.

Plaintiff also contends that Debtors' debt should be found non-dischargeable because the Debtors were insolvent and never intended to repay the loan. Thus, Plaintiff appears to allege that because Debtors filed bankruptcy, there could have been no intent to repay the loan. However, Plaintiff has offered no evidence to indicate that the Debtors never intended to repay the loan. Nor was there any evidence presented that the Debtors were financially insolvent when they signed the loan. The Debtors were seeking a relatively small amount of money, not a consolidation of all their debts. If the Debtors had gone to the bank for the purpose of combining all their loans, it may be conceivable that the Debtors had an ulterior motive. However, the option to consolidate was raised by Mr. Belt, not the Debtors. Because the Debtors had consistently made payments on the previous loans, there is no reason to believe that they did not intend to pay the consolidated loan. This Court finds that the inference of an honest intent exists.

■ Even if this Court were to find that there were false representations made by the Debtor, the Plaintiff has not offered evidence of reasonable reliance. The degree of care necessary to show reliance is that degree of care which would be exercised in an average business transaction by parties under similar

**862**

circumstances. *In re Constantino,* 72 B.R. 231 (Bankr.N.D.Ohio 1987); *In re Kleinoeder,* 56 B.R. 77 (Bankr.N.D.Ohio 1985). At the trial, Mr. Belt repeatedly stressed that Van Wert is a small-town bank whose marketing strategy hinges on deals made on a friendly basis. Mr. Belt testified that Plaintiff did not verify any representations made in the Debtors' loan applications; rather he explicitly stated that he relied on the Debtor's honesty. Any business that follows this home-town method must accept the risky consequences which accompany such a strategy. However admirable this may be, it does not satisfy the requisite reasonable reliance standard under § 523(a)(2)(A).

Based upon the aforementioned reasons, the Court finds that Debtors' debt to Plaintiff totalling Seven Thousand Three Hundred Eighteen and 39/100 Dollars ($7,318.39) is not exempt from discharge under 11 U.S.C. 523(a)(2)(A). In reaching the conclusion found herein, the Court has considered all of the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Debt totalling Seven Thousand Three Hundred Eighteen and 39/100 Dollars ($7,318.39) owed to the Van Wert National Bank be, and is hereby, held *DISCHARGEABLE* under 11 U.S.C. § 523(a)(2)(A).