**In re Vernon BARGER, Dorothy A. Barger, Debtors.**

**GREENWOOD TRUST COMPANY, Plaintiff,**

v.

**Vernon BARGER, Dorothy A. Barger, Defendants.**

Bankruptcy No. 2–86–04146.
Adv. P. No. 2–87–0012.

United States Bankruptcy Court, S.D. Ohio, E.D.

Jan. 5, 1988.

Michael N. Schaeffer, Columbus, Ohio, for plaintiff.

Robert F. Gardner, Columbus, Ohio, for defendants.

FINDINGS OF FACT, ISSUES OF LAW AND CONCLUSIONS OF LAW ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court following trial of a complaint filed by Greenwood Trust Company ("Greenwood"). The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

Greenwood filed its complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2). Greenwood asserts that defendants Dorothy and Vernon Barger, debtors in a Chapter 7 case pending before this Court, made purchases and received cash advances with a Discover credit card issued by Greenwood. Specifically, Greenwood contends that Dorothy Barger purchased merchandise and received cash advances in August, September, and October, 1986 totalling $2,075.15, and that those obligations were incurred through false representations or actual fraud. Because such debt exceeds $500 and because the purchases allegedly were for luxury goods and within forty (40) days of the Bargers' bankruptcy filing, Greenwood also asserts that it is benefited by the presumption of nondischargeability set forth in 11 U.S.C. § 523(a)(2)(C).

In response, Dorothy Barger acknowledges receipt of two cash advances in August totalling $700, but denies making any purchases with the Discover card in September and October of 1986 and denies all allegations of fraud or false representations.

## FINDINGS OF FACT

On October 17, 1986, the Bargers filed their petition under the provisions of Chapter 7 of the Bankruptcy Code. Listed on their bankruptcy schedules was a debt to Greenwood on a Discover card for purchases and cash advances totalling $1,957.31. At the time of filing their petition, it appears the Bargers had not received their October Discover card statement which listed additional purchases and finance charges totalling $117.84. The total pre-petition debt on the Discover card is $2,075.15.

The parties stipulated in their joint pretrial statement, and Dorothy Barger has admitted, that she received two cash advances in August, 1986 totalling $700. The parties dispute, however, whether purchases made after August 26, 1986 were made by Dorothy Barger or by a third party not authorized to use the Bargers' Discover card.

At the trial of this matter, the Court heard testimony of two expert witnesses experienced and trained in document examination regarding the signature of Dorothy Barger on various Discover card sale receipts. Their testimony was received under the provisions of Rule 702 of the Federal Rules of Evidence which provides for the admission of such testimony by witnesses qualified as experts ...

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The first witness, Ray Fraley, a self-employed document examiner and chief document examiner for the Columbus Police Department from 1961 to 1983, testified for Greenwood about the signature on various Discover card sales receipts, specifically, the sales receipts in Exhibits F-J. He reviewed four sample signatures of Dorothy Barger's and two sample signatures on the cash advance receipts and compared them to the sales receipts. He testified that some receipts were not as legible as others because they were reduced in size and somewhat blurred, making it difficult to determine whether the sample signatures were similar to the signatures on the sales receipts. Fraley said that receipts that are clear and legible make it possible to see tremors or hesitation which indicate that a signature is forged. In addition to revealing tremors, a better quality receipt reveals the peculiar characteristics of the individual letters in the name to assist an examiner in deciding whether a signature is forged when compared to a sample signature.

Fraley concluded that sixteen sale receipts, contained in Exhibits F, G, and H, were more legible than the other receipts. He also concluded that such receipts had sufficient similarity with the sample signatures provided him that he believed Dorothy Barger signed such sales receipts. He

testified that the four receipts in Exhibit I were questionable because their low quality made it difficult to conclude that Dorothy Barger signed the four sales receipts.

Exhibit J consisted of ten sales receipts. Fraley stated that the signature on such receipts had "sufficient points of identity" to enable him to conclude that Dorothy Barger signed these receipts. Although these receipts were not as clear as those in Exhibit F, G, and H, Fraley concluded that other writings on the receipts, namely, Dorothy Barger's telephone number, enabled him to conclude that Dorothy Barger signed the sales receipts. That telephone number is not listed in area directories.

Upon cross examination, Fraley stated that handwriting analysis is not as reliable as fingerprinting. Nonetheless, he was convinced that Dorothy Barger signed the sales receipts in Exhibits F, G, H, and J and that Dorothy Barger probably signed the four receipts in Exhibit I.

The expert witness for the Bargers, William T. Bennett, has been a document examiner with the Columbus Police Department for approximately seventeen years. Bennett examined the same sales receipts as Fraley; however, Bennett requested additional samples of Dorothy Barger's signature to make his findings. He obtained sample signatures written before, during, and after September, 1986.

Bennett agreed with Fraley that the signatures on the sales receipts in Exhibits I and J were not as clear as the others. Therefore, it was more difficult to form an opinion regarding such receipts.

When questioned as to whether Dorothy Barger signed the Discover card sales receipts, Bennett said he could not say whether she signed them because of the differences between the formation of certain letters on the sales receipts and those letters in the sample signature of Dorothy Barger. However, when pressed upon cross examination, Bennett said that he would lean towards saying that Dorothy Barger signed all the sales receipts.

Defendant, Dorothy Barger, testified that she received two cash advances, but denies making any purchases after August 26, 1986, with her Discover card. She also denies returning the items for which credit was given on the account. Dorothy Barger received a Discover card statement in September, 1986. After she saw the charges listed on her statement, she stated that she and her husband went to Sears to see if they could find out who made the charges. They also went to another store to find out about the charges on their card for certain purchases. She further stated that she contacted Greenwood to stop any subsequent charges on the card because the Bargers realized that they had lost their card. However, a witness for Greenwood, William Teeven, stated that Greenwood's records showed that Greenwood was notified by the Bargers that their card was lost only when a representative of Greenwood called to inquire about payment of the overdue balance.

Dorothy Barger stated that she and her husband have three children, two of whom live at home. The Bargers receive approximately $800 each month from the government for Mr. Barger's disability and also receive $302 each month for Aid to Dependent Children. Dorothy Barger stated that they have no other sources of income. Because of their limited income, Dorothy Barger testified that they could not pay for the purchases made on their Discover card. Thus, they filed a petition in bankruptcy.

The timing of the purchases in relation to the bankruptcy filing, the similarity of the signatures thereon, the testimony of the experts, the improbability that anyone "finding" the card or a friend "using" the card could duplicate the signature so precisely and also include the correct unlisted telephone number, the inexplicable "returns" of merchandise, the failure to dispute the obligation to Greenwood in the bankruptcy schedules, and the less than forceful way the unauthorized charges were protested cause the Court to find that Dorothy Barger made the purchases in question.

### DISCUSSION OF LAW

Having found that Dorothy Barger made the questioned purchases, the Court must

determine whether such purchases were by "false pretenses, a false representation, or actual fraud" within the meaning of 11 U.S.C. § 523(a)(2)(A) and whether Greenwood's burden in establishing those bases is aided by the presumption set forth in 11 U.S.C. §§ 523(a)(2)(C), which provides:

> For purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act (15 U.S.C. 1601 et seq.) 11 U.S.C. § 523(a)(2)(C).

■ The Court finds that Greenwood failed to produce any evidence that the items purchased were luxury goods. Further, because many of the sales receipts admitted into evidence do not indicate the type of merchandise purchased, the Court cannot and will not conclude that those items were luxury goods. The few receipts which indicate the items purchased list moderately priced clothing purchases such as jeans, tube socks, and underwear. Such goods appear to the Court to be "reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor," within the meaning of § 523(a)(2)(C) and are not luxury goods. See *Sears, Roebuck & Co. v. Faulk (In re Faulk)*, 69 B.R. 743 at 751 (Bankr.N.D.Ind. 1986).

■ Likewise, although Dorothy Barger admitted that she received cash advances totalling $700, because such advances were received more than twenty days before the date of her bankruptcy filing, Greenwood has failed to establish its right to any rebuttable presumption in connection with such charges.

Without the presumption Greenwood must show, by clear and convincing evidence, that Dorothy Barger obtained the cash and purchases by "false pretenses, false representations or actual fraud" within the meaning of § 523(a)(2)(A). *Coman v. Phillips (In re Phillips)*, 804 F.2d 930 (6th Cir.1986).

The Sixth Circuit has stated that in order to find a debt nondischargeable under § 523(a)(2)(A) the creditor must prove the following: (1) a representation was made by the debtor that was material, (2) the representation was false or was made with gross disregard as to its truth, (3) the debtor intended to deceive, (4) the creditor reasonably relied on the false representation, and (5) the creditor suffered a loss.

■ Although it is difficult in the context of a credit card arrangement to find that a cardholder made an overt misrepresentation to a creditor which gives rise to fraudulent conduct, a cardholder may by his conduct imply representations that are false and are the basis for a finding of credit card fraud. Courts have held that presentation of a credit card and signing a receipt constitute a representation of intent to repay, and if the cardholder had no intention at the time of purchase of paying for the goods, such behavior is fraudulent. *Manufacturers Hanover Trust Co. v. Pannell (In re Pannell)*, 27 B.R. 298, 302 (Bankr.E.D.N.Y.1983). "Since obviously, few men will admit to a fraudulent intent, such intent must be established by circumstantial evidence." *Pannell*, 27 B.R. at 302. To determine in this case whether Dorothy Barger made purchases with her credit card with no intention of repaying the debt, the Court must examine the evidence presented.

Several courts have compiled a set of factors as a guide to determining a cardholder's intent. The court in *Sears Roebuck v. Faulk (In re Faulk)*, 69 B.R. 743 at

757 (Bankr.N.D.Ind.1986), provided the following:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges are made;

6. Whether the charges were above the credit limit of the account;

7. Whether the debtor made multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. The financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

The debtors' Discover credit card statements for the months of June and July indicate purchases totalling $38.39. In the month of August there were no new purchases, but $700 was borrowed by cash advances. In September and early October, however, purchases totalled $1,406.21. The charges during September and October were a sudden change, both in number and amount, from the debtors' previous buying habits. In addition, the purchases were made within six weeks prior to the bankruptcy filing on October 17, 1986. Although it is not known when the debtors first consulted their attorney, it can be presumed, since this was not a petition only filing, that such consultation occurred at least several days to a week prior to the bankruptcy filing. Most of the questioned charges were made within a month of that time, and the purchases caused the debtors' credit limit to be exceeded.

The testimony of Dorothy Barger also established that the family's income was limited to Veterans benefits of $800 each month for Vernon Barger and $302 each month as Aid to Dependent Children. No employment potential was identified. Dorothy Barger admitted that the debtors would have had and had no ability to pay for the purchases.

The Court finds that most of the relevant tests set forth in *Faulk,* when measured against the evidence in this adversary action, indicate that Dorothy Barger made the purchases at issue in September and October 1986 with her Discover card with no present intention of paying for those purchases. Such conduct establishes the elements of material false representations with intent to deceive. There can be no doubt that Greenwood relied on those false representations in continuing to extend credit, and discharge of those obligations would be a loss.

Accordingly, the Court finds that Greenwood has established its case against Dorothy Barger as to purchases made in September and October 1986. The Court does not find that fraud was established, however, as to the cash advances admittedly received in August 1986. Therefore, judgment will be entered against Dorothy Barger in favor of Greenwood pursuant to 11 U.S.C. § 523(a)(2) for the amount of $1,406.21. The interest charges on such purchases are also found to be nondischargeable.

The Court finds no evidence that Vernon Barger made any of the questioned purchases or committed any other acts which would cause any contractual obligation he has to Greenwood as a card holder to be excepted from discharge. Accordingly, any obligation to Greenwood from Vernon Barger should be, and the same is, hereby discharged. A judgment will be entered to that effect.

IT IS SO ORDERED.