In re Johnny Mac ROBERTS, Debtor.

FCC NATIONAL BANK, Plaintiff,

v.

Johnny Mac ROBERTS, Defendant.

Bankruptcy No. SK95–82228.
Adv. No. 95–8253.

United States Bankruptcy Court,
W.D. Michigan.

March 20, 1996.

Lisa E. Gochá, Shermeta, Chimko & Kilpatrick, P.C., Rochester Hills, Michigan.

Brian S. Berger, Berger, Boardman & La-Forge, St. Joseph, MI, for Johnny Mac Roberts, Jr.

Marcia R. Meoli, Trustee, Holland, MI.

## SUPPLEMENTAL OPINION DENYING ENTRY OF DEFAULT JUDGMENT [1]

JO ANN C. STEVENSON, Bankruptcy Judge.

At issue in this adversary proceeding is whether a default judgment may enter against a nonappearing debtor in a § 523(a)(2)(A) dischargeability proceeding, where the claimant presents no evidence. We hold that it may not, for the reasons which follow.

Jurisdiction over this matter arises pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this District. This dispute is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, the Court is authorized to enter final judgment, subject to those appeal rights afforded by 28 U.S.C. § 158 in accord with Fed.R.Bankr.P.

---

1. This opinion supplements an October 16, 1995 bench opinion subsequently affirmed in the October 17, 1995 Judgment of No Cause of Action.

8001 and 8002. The following constitute the Court's findings of fact and conclusions of law as required under Fed.R.Bankr.P. 7052.

### Findings of Fact

Debtor and Defendant Johnny Mac Roberts filed for Chapter 7 protection on May 5, 1995. Among the debts he sought to discharge was a $7,723.61 Visa card debt owed Plaintiff FCC National Bank ("the Bank"). On July 14, 1995, the Bank timely filed an adversary complaint seeking to have the debt adjudged nondischargeable under 11 U.S.C. § 523(a)(2)(A). The Defendant failed to timely file his answer whereupon the Clerk served a "Notice of Time Set for Taking Default Judgment." The Bank's attorney, Lisa E. Gochá, Esq., along with a Bank employee who was to serve as a witness, attended the September 18, 1995 hearing on the matter. Debtor Roberts also appeared, *pro se.* At the hearing Mr. Roberts admitted he owed the money at issue. However, Ms. Gochá elected not to proceed with testimony but asked for an adjournment to October 16, 1995, which the Court granted.

Though the Defendant did not appear at the October 16 adjourned hearing, Ms. Gochá did, this time without a witness. She elected to proceed, whereupon she recited certain facts already alleged in the Bank's complaint: that in December 1994, the Debtor submitted a Visa account application with the Bank, which was approved; that in January 1995, the Debtor took a total of $3,600 in cash advances and made purchases of $308.03 on the account, and in February 1995, cash advances of $1,500 and purchases of $1,673.22; and finally, that the Debtor made only one payment on the account, of $130, in February 1995. Nothing else was presented.

The Bank listed two counts in its complaint. In Count I the Bank alleged that—

at the time the Defendant applied for the extension of credit with [the Bank], the Defendant was cognizant of the inability to repay the extension of credit or alternatively, did not intend to repay the extension of credit extended by [the Bank].

Those rulings are hereby amended to the degree they are inconsistent with this opinion.

Complaint ¶ 9. This constituted § 523(a)(2)(A) fraud, according to the Bank. In Count II the Bank listed the specific charges and the dates they were incurred, and, using the same language as in the cited paragraph of Count I, alleged that those acts also constituted fraud under § 523(a)(2)(A). *Id.* ¶ 19.

## Analysis

■ The Bank brings its claim under § 523(a)(2)(A), which operates to deny discharge to an individual debtor from any debt—

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by
>
> (A) false pretenses, false representation, or actual fraud. . . .

11 U.S.C. § 523(a)(2)(A).

■ According to *Longo v. McLaren*, 3 F.3d 958 (6th Cir.1993),

> [i]t is well established that in order to except a debt from discharge under § 523(a)(2)(A) the creditor must prove that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of loss.

*McLaren,* at 961 (citations omitted).[2]

■ A creditor seeking to except a debt from discharge under § 523 must prove each element of its claim by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). In addition, exceptions to discharge are to be strictly construed against the creditor. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Manufacturer's Hanover Trust Co. v. Ward (In re Ward),* 857 F.2d 1082, 1083 (6th Cir.1988).

*1. Intent and § 523(a)(2)(A)*

■ It is well-settled that the type of fraud which comes within the ambit of § 523(a)(2)(A) is actual fraud, which involves moral turpitude or intentional wrong, as opposed to fraud "implied in law," which may be found in cases where such intentional wrongdoing is absent. *Coman v. Phillips (In re Phillips),* 804 F.2d 930, 932 (6th Cir. 1986). In order to prove actual fraud it is necessary to show that the debtor intended to deceive the creditor in an attempt to obtain money. *McLaren, supra,* at 961; *Chase Manhattan Bank v. Ford,* 186 B.R. 312, 318 (Bkrtcy.N.D.Ga.1995) ("[i]f one does not have proof of the debtor's misrepresented intent, then one does not have proof of actual fraud"). And if room exists for the court to infer honest intent, the issue of dischargeability must be decided in favor of the debtor. *Van Wert National Bank v. Druckemiller,* 177 B.R. 859, 861 (Bkrtcy.N.D.Ohio 1994).

■ Courts have noted that it is difficult to fit credit card fraud into the test for actual fraud, since the usual credit card transaction involves no express representation. *See, Ohio Savings Bank v. Larson (In re Larson),* 103 B.R. 160, 163 (Bkrtcy.S.D.Ohio 1989). A solution, mentioned by the Sixth Circuit in *dicta* and adhered to by many bankruptcy courts, is to treat the card holder's signature on a credit card slip as an implied representation of the debtor's intent to repay the debt. If the debtor had no such intention at that time, the purchase is fraudulent. *In re Ward, supra,* at 1085; *In re Larson, supra,* at 163; *Greenwood Trust Co. v. Barger (In re Barger),* 85 B.R. 756, 760 (Bkrtcy.S.D.Ohio 1988).

■ A related problem arises when courts delve into what constitutes evidence of intent. Direct evidence of intent is difficult if not impossible to obtain, and the usual debtor is unlikely to testify that he took cash advances or borrowed money not intending to repay the resulting debt. The rule which has emerged is that circumstantial evidence must

2. The very recent Supreme Court case of *Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), modified these requirements in one particular. The *Field* Court held that the proper standard for reliance is not the above-noted objective or "reasonable" standard, but the more subjective "justifiable" reliance standard.

be relied upon to establish fraudulent intent. *Galvin v. Cole*, 164 B.R. 947, 950 (Bkrtcy. N.D.Ohio 1993) (citations omitted); *Manufacturers Hanover Trust v. Pannell (In re Pannell)*, 27 B.R. 298, 302 (Bkrtcy.E.D.N.Y. 1983). An often-cited case lists several factors which courts might consider in divining cardholder intent:

1) the length of time between the charges made and the filing;

2) whether a bankruptcy attorney was consulted before the charges were made;

3) the number of charges made;

4) the amount of the charges;

5) the debtor's financial condition at the time the charges were made;

6) whether the charges were above the credit limit of the account;

7) whether the debtor made multiple charges on the same day;

8) whether the debtor was employed;

9) the debtor's prospects for employment;

10) the financial sophistication of the debtor;

11) whether there was a sudden change in the debtor's buying habits;

12) whether the purchases were made for luxuries or necessities.

*In re Larson, supra*, at 164 (*citing Sears Roebuck v. Faulk (In re Faulk)*, 69 B.R. 743, 757 (Bkrtcy.N.D.Ind.1986)).

 In this case we need not address these factors in any detail, however, because the Bank failed to present evidence on any of them. Indeed, the Bank put forth no evidence at all but only argument, which is never considered evidence. *See, e.g., Bills v. Aseltine*, 52 F.3d 596, 601 (6th Cir.1995).[3] Even assuming counsel's recitation of alleged facts could be considered "evidence," the Bank would not have met the requisite *Grogan* burden as to proving the Debtor's intent. Section 523(a)(2)(A) intent cannot be inferred on the basis of the allegations in a complaint, re-alleged in court. And, of course, intent cannot be implied from the mere fact that charges were made which eventually went unpaid. If it could, "every credit card debt listed on every bankruptcy petition would be presumed to have been fraudulently incurred." *FCC National Bank v. Sharp (In re Sharp)*, 144 B.R. 372, 375 (Bkrtcy. S.D.Ohio 1992).

 In general, if a creditor hopes to establish intent to deceive through circumstantial evidence, the debtor must be questioned under oath. The Federal Rules of Bankruptcy Procedure, however, present a procedural hurdle for claimants as debtors are *not* required to appear in dischargeability proceedings. While Fed.R.Bankr.P. 4002(2) (Duties of Debtor) requires a debtor to "attend the hearing on a complaint objecting to discharge and testify, if called as a witness," a negative inference applies. As stated by one commentator:

> Rule 4002(2) does not extend to exceptions to discharge from debts described under Code § 523(a). Therefore, if a creditor desires to call the debtor to testify at such a trial ..., a subpoena should be served upon the debtor in order to ensure that the debtor will be there to testify.

Norton Bankruptcy Law and Practice 2d 272 (1995); *see also* Collier on Bankruptcy ¶ 4002.04 (15th ed. 1995). Nevertheless, the Rules do not leave claimants powerless. In this case, the Bank could have subpoenaed the Debtor as provided for in Fed.R.Bankr.P. 9016, compelling him to appear at the Hearing for Default Judgement. Or, it could have scheduled a Fed.R.Bankr.P. 7030 or 7031 deposition for use at the hearing under Fed. R.Bankr.P. 7032 guidelines. Whichever the method, the Rules provide a claimant such as the Bank the right and power to secure a debtor's appearance in a dischargeability proceeding.

### 2. Entry of Default Judgment

As it was, the Debtor did not appear and the Bank offered no evidence. Thus, the issue becomes whether a default judgment will enter. Rule 7055 ("Default") applies here, and provides:

> .... If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to deter-

---

**3.** Evidence is defined as "any species of proof, or probative matter, legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, exhibits, concrete objects, etc., for the purpose of inducing belief in the minds of the court or jury as to their contention." Black's Law Dictionary 555 (6th ed. 1990).

mine the amount of damages *or to establish the truth of any averment by evidence or to make an investigation of any other matter,* the court may conduct such hearings or order such references as it deems necessary and proper. . . . (emphasis added).

Fed.R.Bankr.P. 7055(b)(2).

The Court emphasized this point in its August 25, 1995 Notice of Time Set for Taking Default Judgment, stating that—

[a]t the hearing for the default judgment, all facts properly pleaded will be deemed admitted. However, *testimony and proofs will be required for objections to discharge or dischargeability matters.* (emphasis supplied).

While the Debtor was clearly in default— he failed to answer the Bank's complaint— entry of a default judgment is within the Court's discretion under Fed.R.Bankr.P. 7055. *See, Wells Fargo Bank v. Beltran (In re Beltran),* 182 B.R. 820, 823 (9th Cir. BAP 1995). The Bank having introduced no evidence on the issue of the Debtor's intent to defraud, the Court declines to enter default judgment.

### Conclusion

As the party bearing the burden of proof in this matter, it was incumbent upon the Bank to produce evidence at the hearing. Even if the Court were to accept as proof counsel's statements regarding the dates of the cash advances and purchases, no proof was offered as to the "intent to deceive," an element necessary to a finding of actual fraud under § 523(a)(2)(A). Indeed, a default judgment based on such allegations would amount to a judgment of fraud implied in law, a result not permitted under § 523(a)(2)(A).

ACCORDINGLY, a default judgment will NOT be entered in this matter.[4] IT IS SO ORDERED.

---

4. Finally, the Court must modify its original ruling in one particular. The record and the Court's October 17, 1995 Judgment of No Cause of Action indicate a dismissal of the Plaintiff's complaint "with prejudice." Upon reconsideration, the Court now rules that while the default judgment will not enter, Plaintiff is free to proceed to trial.