*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-189

MICHAEL D.J. EISENBERG, APPELLANT,

V.

SHIRLEY SWAIN, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-6509-12)

(Hon. Florence Y. Pan, Trial Judge)

(Submitted April 23, 2020                     Decided July 30, 2020)

*Michael D.J. Eisenberg*, pro se.

Shirley Swain, *pro se.*

Before FISHER, EASTERLY, and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*:  Michael D.J. Eisenberg was awarded $7,800 in unpaid attorney's fees against his former client, Shirley Swain.  After garnishing $1,499 of Ms. Swain's wages, Mr. Eisenberg learned that she had received a discharge of debt through a Chapter 7 bankruptcy filing in the United States Bankruptcy Court for the Western District of Virginia.  The Superior Court ordered

Mr. Eisenberg to return the garnished wages to Ms. Swain until a decision was reached on whether his judgment against her was included in the bankruptcy discharge. Mr. Eisenberg did not comply. The Superior Court then issued an order that included three rulings: (1) it ruled that Ms. Swain's debt to Mr. Eisenberg had been discharged, (2) it held Mr. Eisenberg in contempt of court for his failure to return the garnished wages, and (3) it rejected Mr. Eisenberg's request to add Ms. Swain's bankruptcy attorney as a defendant in the underlying breach of contract case after Mr. Eisenberg alleged that Ms. Swain's attorney had conspired with her to defraud Mr. Eisenberg. Mr. Eisenberg now challenges each of those rulings. We detect no error and affirm.

## I.

In April 2011, Shirley Swain retained Michael D.J. Eisenberg as her counsel in a matter against her employer, the Department of Veterans Affairs, before the Equal Employment Opportunity Commission. Ms. Swain agreed to pay Mr. Eisenberg a true retainer and a contingency fee in exchange for representation. In April 2012, Ms. Swain entered into a confidential settlement agreement with the Department of Veterans Affairs, pursuant to which they paid Mr. Eisenberg $48,000 and Ms. Swain $35,000.

After receiving his $48,000 payment from Ms. Swain's employer, Mr. Eisenberg maintained that he was still owed $7,800: $7,000 of Ms. Swain's $35,000 share of the settlement (reflecting a 20% portion of her award in contingency fees, in addition to the $48,000 he had already collected) along with an additional $800 in unpaid retainer. In July 2012, Mr. Eisenberg contacted Ms. Swain and requested the outstanding payment. According to Mr. Eisenberg, Ms. Swain acknowledged that she owed the money, but informed him that she had deposited the funds into her own bank account. In August 2012, Ms. Swain notified Mr. Eisenberg that she did not have the funds to pay him. Mr. Eisenberg promptly filed a lawsuit in Superior Court alleging breach of contract and quantum meruit and requesting damages in the amount of $7,800 plus interest. In response, Ms. Swain did not dispute that she owed Mr. Eisenberg $7,800, though she claimed that she was under the initial impression that all payments were satisfied by the $48,000 sum Mr. Eisenberg received from the settlement and the $2,200 she had already paid in retainer fees. In addition, Ms. Swain maintained that she was not able to pay Mr. Eisenberg $7,800 and that Mr. Eisenberg had repeatedly refused to enter into a payment plan.

While Mr. Eisenberg's motion for summary judgment was pending before the trial court, Ms. Swain filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Virginia, and the Superior Court

proceedings were stayed. In June 2015, Ms. Swain's Chapter 13 bankruptcy case was dismissed, and the trial court proceedings continued. In September 2015, Judge Dixon granted summary judgment for Mr. Eisenberg on the basis that Ms. Swain did not contest that she owed the $7,800 and neither Mr. Eisenberg's refusal to accept a payment plan nor Ms. Swain's inability to pay the full amount was sufficient to create a material dispute of fact regarding the underlying contractual breach.

Mr. Eisenberg tried to collect the $7,800 judgment from Ms. Swain by hiring a collection agency called Accounts Receivable but was unsuccessful. In April 2016, Mr. Eisenberg obtained a writ of attachment allowing him to garnish Ms. Swain's wages directly from her employer.

In July 2016, Ms. Swain initiated a second bankruptcy proceeding in the United States Bankruptcy Court for the Western District of Virginia, this time under Chapter 7. Ms. Swain included the debt she owed to Mr. Eisenberg in her filings but listed the creditor as Accounts Receivable, Mr. Eisenberg's collection company, rather than Mr. Eisenberg himself. As a result, Mr. Eisenberg was not notified of Ms. Swain's bankruptcy filing until October 2016, when he received a letter from Ms. Swain's bankruptcy attorney asserting that Ms. Swain's debts had been discharged. By that time, Mr. Eisenberg had garnished a total of $1,499 in wages

from Ms. Swain. After receiving notification of the bankruptcy discharge, Mr. Eisenberg filed a motion to stay garnishment in the Superior Court. In November 2016, the Superior Court granted Mr. Eisenberg's motion and vacated the writ of attachment. In an accompanying certificate issued by the clerk of the court, Mr. Eisenberg was instructed to return all funds he had obtained through garnishment to Ms. Swain.

In January 2017, Mr. Eisenberg filed a motion to stay the return of garnished funds. He argued that although the court "ordered the moneys be returned to Ms. Swain," he had not exhausted his legal remedies in bankruptcy court and the $1,499 should be kept in his trust account "in order to assure that the moneys are protected and the status quo is maintained." Judge Florence Y. Pan denied Mr. Eisenberg's motion and directed him to comply with the previous order by relinquishing the garnished funds. Specifically, Judge Pan found that Mr. Eisenberg was "not entitled to garnishment at [the] time, and it would be unjust to allow [Mr. Eisenberg] to retain [Ms. Swain]'s money pending the outcome of [Ms. Swain]'s bankruptcy matter."

Mr. Eisenberg still refused to return the garnished funds to Ms. Swain. In February 2018, Mr. Eisenberg brought a motion in bankruptcy court to reopen Ms. Swain's Chapter 7 case, arguing that his debt should not have been discharged

because he was not listed as a creditor and thus he was not notified of his opportunity to dispute the discharge. The bankruptcy court concluded that the listing of Accounts Receivable as a creditor was not sufficient to apprise Mr. Eisenberg of the bankruptcy proceedings and that he was not provided with notice of his right to contest the discharge of the debt. It nonetheless declined to reopen the bankruptcy proceeding, finding that the Superior Court was better positioned to determine whether the debt at issue had been discharged.

In accordance with the bankruptcy court's order, Mr. Eisenberg filed a motion in Superior Court to reopen the breach of contract case for a determination regarding the discharge of the debt. Judge Pan held a hearing on December 3, 2018. At this hearing, Judge Pan learned that in the nearly two years since Mr. Eisenberg had been ordered to return Ms. Swain's garnished wages, he had instead held the money in his trust account. Judge Pan asked for further briefing on the discharge of the debt and issued an order to show cause why Mr. Eisenberg should not be held in contempt for failing to comply with the court's February 23, 2017, order requiring him to return the $1,499 to Ms. Swain. Both parties submitted briefing on the discharge of the debt and the propriety of holding Mr. Eisenberg in contempt. In addition, Mr. Eisenberg filed a motion to join Ms. Swain's bankruptcy attorney, Easter P. Moses, as a defendant in the breach of contract case. Judge Pan held another hearing on

February 25, 2019, and issued an oral ruling followed by a written order. Judge Pan found that Ms. Swain's debt to Mr. Eisenberg had been discharged, held Mr. Eisenberg in contempt for violating a court order, and denied Mr. Eisenberg's motion to join Mr. Moses as a defendant. Judge Pan issued sanctions for Mr. Eisenberg's contempt in the form of compensatory damages, ordering Mr. Eisenberg to pay Ms. Swain $978.22 in addition to the $1,499 in garnished wages, which he was instructed to return "forthwith."

## II.

We begin with the core question at issue: whether Ms. Swain's $7,800 debt to Mr. Eisenberg was subject to the discharge order of the United States Bankruptcy Court for the Western District of Virginia. We agree with the trial court that it was.

When a discharge is issued in a Chapter 7 no-asset bankruptcy case, it encompasses "all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b) (2018). This includes both scheduled and unscheduled debts unless the debt itself was incurred fraudulently or maliciously, per 11 U.S.C. § 523(a)(2), (4),

or (6).[1] *See* 11 U.S.C. § 523(a)(3)(B); *Judd v. Wolfe*, 78 F.3d 110, 113–14 (3d Cir. 1996); *In re Rollison*, 579 B.R. 67, 72 (Bankr. W.D. Va. 2018). Because of the broad and retroactive language of § 727(b), "all of a debtor's prepetition debts—both those scheduled and those not scheduled—are discharged upon entry of the discharge order." *In re Rollison*, 579 B.R. at 71–72; *In re Davis*, No. 18-12412-JDL, 2019 WL 2511756, at *2 (Bankr. W.D. Okla. June 17, 2019) ("[A] debt which was not scheduled in a chapter 7 no-asset case is subject to the discharge order unless it is a debt of the kind specified in section 523(a)(2), (4), or (6).") (citing *Rollison*, 579 B.R. at 72). When a question arises *after* the issuance of a discharge regarding whether a particular unscheduled debt falls within a § 523(a) exemption, it does not require reopening the bankruptcy case. *Rollison*, 579 B.R. at 75. This is because "the relief sought from the court by the parties after the case has closed is not an order to discharge the debt, but rather a declaratory order that the debt was or was not already discharged." *In re Keenom*, 231 B.R. 116, 125 (Bankr. M.D. Ga. 1999). Seeing no need to reopen Ms. Swain's bankruptcy proceeding to address the

---

[1] Specifically, 11 U.S.C. § 523(a) exempts from a § 727 discharge any debt incurred by "false pretenses, a false representation, or actual fraud," § 523(a)(2), incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," § 523(a)(4), or incurred "for willful and malicious injury by the debtor to another entity or to the property of another entity," § 523(a)(6).

discharge of her debt to Mr. Eisenberg, the bankruptcy judge denied Mr. Eisenberg's motion to reopen and left the determination up to the Superior Court.

Although bankruptcy courts generally have exclusive jurisdiction over the discharge of scheduled debts, *see, e.g.*, *In re Smith*, 189 B.R. 240, 243 (Bankr. D.N.H. 1995), a debtor who fails to schedule a debt waives this exclusivity. *In re Rollison*, 579 B.R. at 72–73; *see also In re Keenom*, 231 B.R. at 126–27. By failing to properly list Mr. Eisenberg as a creditor, Ms. Swain "forfeit[ed] two benefits otherwise available to [her]: (i) the 60–day limitations period to file a complaint to determine dischargeability of a debt under Federal Rule of Bankruptcy Procedure 4007(c) and (ii) exclusive federal jurisdiction of dischargeability determinations pursuant to sections 523(a)(2), (4), or (6)." *In re Rollison*, 579 B.R. 72–73. Because Ms. Swain waived her right to an exclusive and expeditious determination by the bankruptcy court regarding the discharge of her debt to Mr. Eisenberg, the Superior Court had concurrent jurisdiction over the question. *See* 28 U.S.C. § 1334(b) (2018); *In re Massa*, 217 B.R. 412, 413 (Bankr. W.D.N.Y. 1998); *In re Hicks*, 184 B.R. 954, 962 (Bankr. C.D. Ca. 1995); *In re Franklin*, 179 B.R. 913, 924 (Bankr. E.D. Ca. 1995); *In re Mendiola*, 99 B.R. 864, 870 (Bankr. N.D. Ill. 1989).

Mr. Eisenberg argues that the money Ms. Swain owed him was obtained by "false pretenses, a false representation, or actual fraud," and was therefore not dischargeable under 11 U.S.C. § 523(a)(2)(A). To support this claim, the burden was on Mr. Eisenberg to prove the debt's fraudulent nature in the trial court by a preponderance of the evidence.[2] *Grogan v. Garner*, 498 U.S. 279, 287–88 (1991). A claim for false representation requires a showing that: "The debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was reasonable; and the debtor's representation caused the creditor to sustain a loss." *In re Young*, 91 F.3d 1367, 1373 (10th Cir. 1996); *see also In re White*, 550 B.R. 615, 620 (Bankr. N.D. Ga. 2016); *In re Moody*, 203 B.R. 771, 773 (Bankr. M.D. Fla. 1996); *In re Druckemiller*, 177 B.R. 859, 860–61 (Bankr. N.D. Ohio 1994); *In re Carozza*, 167 B.R. 331, 336 (Bankr. E.D.N.Y. 1994). A claim for actual fraud is broader than a claim for false representation, but requires "something said, done, or omitted by a person with the design of perpetrating what [she] knows to be a cheat

---

[2] Mr. Eisenberg suggests that Judge Pan erroneously applied District of Columbia law in reviewing his claim and asserts that Virginia law governing fraud should control. Mr. Eisenberg, in accusing Ms. Swain of committing a felony under the laws of Virginia, appears to confuse federal bankruptcy law with state criminal law. The court below was not required to find that a crime had been committed under the laws of the District of Columbia, Virginia, or any other local jurisdiction; only that Mr. Eisenberg had met his burden of establishing fraud under the applicable bankruptcy statutes.

or deception." *In re Stentz*, 197 B.R. 966, 981 (Bankr. D. Nebr. 1996). Actual fraud, at its core, requires "moral turpitude or intentional wrong," and "if room exists for the court to infer honest intent, the issue of dischargeability must be decided in favor of the debtor." *In re Roberts*, 193 B.R. 828, 830 (Bankr. W.D. Mich. 1996); *see also In re Spar*, 176 B.R. 321, 327 (Bankr. S.D.N.Y. 1994) ("[F]raud implied in law which may exist without imputation of bad faith or immorality, is insufficient.") (citation omitted).

Mr. Eisenberg asserts that Ms. Swain obtained the $7,800 owed to him by fraud because when Ms. Swain received her $35,000 settlement, she "actively concealed and converted [Mr. Eisenberg]'s property"—the $7,000 owed in contingency fees—"to herself rather than transfer these moneys." At the February 25, 2018 hearing, the trial court pressed Mr. Eisenberg on the factual basis for his belief that the disputed $7,000 was his "property," asking, "what makes you think that the [Department of Veterans Affairs] earmarked $7,800 of the settlement and told Ms. Swain, give this to Mr. Eisenberg?" Mr. Eisenberg responded that he did not know whether the money was in fact earmarked, he was simply making an allegation that it was. When the court followed up with Ms. Swain, she explained, "Your Honor, they sent me a check, to my PO box, $35,000 in an envelope, sealed up with my name on it, and that was it." Mr. Eisenberg did not provide the trial

court with any evidence controverting this account. When asked why, under these circumstances, this was not "a run of the [mill], my-client-didn't-pay-me-case," Mr. Eisenberg responded only that both the Department of Veterans Affairs and Ms. Swain knew that "the money was [his]."

Mr. Eisenberg's bald assertion that Ms. Swain "actively concealed and converted" his property comes nowhere close to establishing either false representation or actual fraud by a preponderance of the evidence. Not only is his conclusion—that $7,000 of Ms. Swain's settlement check was his "property"[3]— unsupported by the evidence, it is contradicted by it. The facts below establish that Ms. Swain agreed to pay Mr. Eisenberg 20% of any award she received and that, upon receiving $35,000 in settlement funds, she failed to fulfill her obligation to pay

_____

[3] Mr. Eisenberg's pleadings before the Superior Court and this court make allegations of fraud only as to the $7,000 in unpaid contingency fees, and not to the $800 of unpaid retainer. Mr. Eisenberg nonetheless concludes in a footnote of his appellate brief that because "the $800 is still part of Appellee's C7BC debt that Appellant is attempting to dismiss" and is part of "Appellee's alleged fraudulent BC filings," it is still recoupable. It is unclear upon what basis Mr. Eisenberg draws that conclusion. Ms. Swain's actions in initially obtaining the $7,800 and in failing to correctly identify Mr. Eisenberg as her creditor do not amount to fraud based on the record before us. We thus agree with the trial court's finding that the full $7,800 was discharged on October 6, 2016.

him his share of that award.[4]  As the trial court noted, this was the foundation for Mr. Eisenberg's initial breach of contract claim and, along with the outstanding retainer, the reason for the underlying $7,800 judgment.  It is not, however, fraud. *See In re Robinson-Vinegar*, 561 B.R. 562, 567 (Bankr. N.D. Ga. 2016) ("[A]n inability to pay does not give rise to the inference that the Debtor intended not to repay the loans as an actual fraud."); *In re Guy*, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988) ("[A] mere breach of contract by the debtor without more, does not imply existence of actual fraud for purposes of the exception to discharge under § 523(a)(2)(A).").

The $35,000 in settlement funds was paid directly to Ms. Swain under the terms of her settlement agreement with the Department of Veterans Affairs.  It was her money.  The fact that she owed $7,000 to Mr. Eisenberg pursuant to a separate representation agreement between the two of them does not alter this fact and Ms. Swain's mere knowledge of her obligation and subsequent failure to satisfy it does not meet the high scienter of actual fraud.  Mr. Eisenberg did not allege or provide evidence of any specific representations, false or otherwise, made by Ms. Swain

---

[4]  The representation agreement between Mr. Eisenberg and Ms. Swain was not submitted to the trial court and is not a part of the record on appeal.  The parties do not dispute the pertinent content of their agreement.

upon which he relied outside of her general agreement to pay him under the terms of their contract. And despite Mr. Eisenberg's repeated assertions to the contrary, nothing in the record suggests any intentionally deceptive or otherwise immoral conduct on the part of Ms. Swain. The record depicts Ms. Swain as a woman who, despite some confusion as to why her attorney continued to request money from her after initially receiving $48,000, and despite having limited money on hand, has consistently attempted to engage in good-faith efforts to fulfill her obligations to Mr. Eisenberg. The fact that Ms. Swain owed Mr. Eisenberg a debt she was ultimately unable to pay is precisely the circumstance a Chapter 7 discharge was designed to address.

## III.

Mr. Eisenberg challenges Judge Pan's contempt ruling and associated sanctions. Mr. Eisenberg's actions in this litigation justified holding him in contempt. We affirm the trial court's judgment on this ground as well.

Mr. Eisenberg was ordered to return $1,499 to Ms. Swain on November 17, 2016. His motion to stay the return of these funds was denied on February 23, 2017. Despite twice receiving clear instruction from the court to return $1,499 to Ms. Swain, Mr. Eisenberg had not returned the funds when he appeared before the court

on December 3, 2018, more than two years after the initial order, and nearly two years after his motion to stay return of the funds was denied. When questioned by the trial court on the reasons for his noncompliance, Mr. Eisenberg said only, "I believe the judgment was actually void given the history that we have gone through," adding later that he believed "federal law" superseded the Superior Court's authority and that Judge Pan had relinquished jurisdiction over the issue. When asked why, given these beliefs, he had not filed a motion to reconsider, Mr. Eisenberg responded that he "wasn't aware that was an option." At other points during this exchange, however, Mr. Eisenberg represented that he kept the funds in his trust account because "Ms. Swain had been resistant and deceptive, and [he] wanted to make sure [he] preserved [his] property" and that "those monies were [his], and . . . since they were in dispute . . . [he] left them in the trust account." These alternating and seemingly self-serving rationales left Judge Pan with the well-founded impression that after receiving a ruling he did not like, Mr. Eisenberg "just did what [he] wanted to do" and that his actions were "[n]ot in good faith." Judge Pan issued an order to show cause why Mr. Eisenberg should not be held in contempt and requested briefing from both parties.

At a second hearing, held on February 25, 2019, Judge Pan questioned Mr. Eisenberg and Ms. Swain on their positions regarding contempt. In conjunction with

this questioning, Judge Pan asked Ms. Swain to detail the expenses she had incurred as a result of not having the $1,499 returned to her. These included moving expenses after Ms. Swain was unable to pay her rent and had to relocate, as well as time spent litigating the issue in Superior Court. In a written order issued on March 1, 2019, Judge Pan held Mr. Eisenberg in contempt of court and ordered him to pay compensatory damages to Ms. Swain in the amount of $978.22.[5]

Superior Court judges have express authority to "punish for disobedience of an order or for contempt committed in the presence of the court." D.C. Code § 11-944(a) (2012 Repl.) In addition to its statutorily derived authority, the court retains a well-established power to punish for contempt that is "inherent in the nature and constitution of a court . . . arising from the need to enforce compliance with the administration of the law." *Brooks v. United States*, 686 A.2d 214, 220 (D.C. 1996) (citation and quotation marks omitted). The decision whether to hold a party in civil contempt is confided to the sound discretion of the trial judge, and will be reversed on appeal only upon a clear showing of abuse of discretion. *In re T.S.*, 829 A.2d 937, 940 (D.C. 2003).

---

[5] The precise accounting for this total was: a seven-day U-Haul rental at $29 each day, six hours spent writing briefs and preparing for the hearing on the order to show cause at Ms. Swain's previous hourly rate of $15.89 per hour, $500 as general compensation for the stress and inconvenience of moving, and an interest rate of 6%.

In challenging the trial court's contempt ruling, Mr. Eisenberg advances three arguments: (1) that the Superior Court did not have substantive jurisdiction over the garnished funds, (2) that the underlying order was vague and ambiguous as to when the money had to be returned to Ms. Swain, and (3) that, for a variety of ill-supported reasons, his actions could not be deemed contemptuous. Each argument is meritless.

## A.

Mr. Eisenberg claims that the Superior Court lacked substantive jurisdiction over the garnished wages, rendering the underlying order requiring him to return the money to Ms. Swain void. While it is true that "[v]oidness of a court order is an absolute defense to a contempt motion," an order is void for lack of jurisdiction only when the issuing court is "powerless to enter it." *Kammerman v. Kammerman*, 543 A.2d 794, 799 (D.C. 1988) (citation omitted). Mr. Eisenberg asserts that the Superior Court did not have substantive jurisdiction over the disputed funds because they were under the exclusive jurisdiction of the bankruptcy court. As explained in detail above, he is wrong about that. Because Mr. Eisenberg's debt was unscheduled, the funds at issue were subject to the concurrent jurisdiction of the Superior Court. *See, e.g.*, *In re Rollison*, 579 B.R. at 72–73.

Mr. Eisenberg also argues that any substantive jurisdiction the Superior Court may have had was nonetheless waived by Judge Pan's statement in the order that she was "not in a position to evaluate the merits of plaintiff's motion to dismiss defendant's bankruptcy." Mr. Eisenberg relies heavily on this statement, alleging in his brief that the Superior Court "at the time chose to relinquish its jurisdiction over the disputed money as it pertained to the [federal bankruptcy law] issue and send it to [the bankruptcy court]." Mr. Eisenberg advances this interpretation despite the immediately preceding sentence in the order, which reads, "[Mr. Eisenberg] is not entitled to garnishment at this time, and it would be unjust to allow [Mr. Eisenberg] to retain defendant's money pending the outcome of [Ms. Swain]'s bankruptcy matter," and the immediately following sentence, which reads, "[t]he Court, therefore, denies plaintiff's motion to stay the order releasing garnishment." In the context of the order as a whole, Mr. Eisenberg's suggestion that Judge Pan expressly relinquished jurisdiction over the garnished funds is patently unreasonable.[6]

---

[6] It is worth noting that in his motion to stay the return of garnished funds, Mr. Eisenberg represented to the court that he believed he could "Move the Bankruptcy Court to Dismiss Ms. Swain's bankruptcy thus requiring Ms. Swain to resume payments to Mr. Eisenberg." Given this representation by Mr. Eisenberg, the trial court was correct to conclude that it would not have jurisdiction over the precise bankruptcy issue. As discussed *supra*, the dismissal of a bankruptcy case is substantively distinct from a post-bankruptcy determination as to the dischargeability of a particular debt. Regardless of the theory Mr. Eisenberg intended to advance in support of his efforts to reopen a resolved bankruptcy court

**B.**

We likewise reject Mr. Eisenberg's assertion that the order was vague because it did not list a date by which the funds had to be returned. Nothing in the record suggests a genuine confusion on Mr. Eisenberg's part about when the return of funds was required. To the contrary, in Mr. Eisenberg's motion to stay the return of the garnished funds, he acknowledged that the court had "ordered the moneys be returned to Ms. Swain," but specifically requested that the order be stayed "pending the exhaustion of his legal remedies." In her order denying this motion, Judge Pan stated that it would be unjust to allow Mr. Eisenberg to keep the money "pending the outcome of defendant's bankruptcy matter" and ordered the funds returned. To the extent that there was any ambiguity in the initial order, it is clear from the ensuing litigation that the order contemplated the prompt return of the funds during the pendency of the bankruptcy matter. Under any interpretation of the language of the order, a delay of two years—during which time Mr. Eisenberg actively pursued his claims in both bankruptcy court and the Superior Court—is clearly not contemplated. Finally, "the proper response to a seemingly ambiguous court order is not to read it as one wishes." *Loewinger v. Stokes*, 977 A.2d 901, 907 (D.C. 2009).

---

proceeding, the Superior Court retained its jurisdiction over funds garnished pursuant to a writ of attachment it issued for collection of a judgment it entered.

If a party subject to a court order genuinely does not understand its requirements, he may "apply to the court for construction or modification." *Id.* To fail to take such steps is "to act at one's peril as to what the court's ultimate interpretation of the order will be." *Id.* (quoting *D.D. v. M.T.*, 550 A.2d 37, 44 (D.C. 1988)).

## C.

In addition to those two core arguments, Mr. Eisenberg advances a number of frivolous arguments: that his violation of the trial court's order was excused by the fact that he adhered to the Rules of Professional Conduct by keeping the funds in his trust account rather than in a personal account; that his violation of the order was so public and open that it could not be deemed contemptuous (owing to a lack of deceit); and that Judge Pan was "so biased that it raises doubt to the public perception that [she] can be fair and impartial." On this last point, Mr. Eisenberg elaborates substantially, accusing Judge Pan at various points in his brief of violating Rules 1.2, 2.2, 2.5, 2.6, 2.9(A), and 2.9(B) of the Code of Judicial Conduct and Super. Ct. Civ. R. 5.2, and of exhibiting personal bias against him.[7] Although Mr. Eisenberg cites

---

[7] Mr. Eisenberg also accuses Judge Pan of violating three rules that do not exist: Rule "3E(1)" of the Code of Judicial Conduct and Super. Ct. Civ. R. "1.8" and "49.1."

nothing from the record to support his claim of bias, he goes so far as to suggest it could be because Judge Pan "observes a white male collecting from an allegedly poor black female."

There is no evidence in the record of any misconduct or judicial violations on the part of Judge Pan, who exhibited patience and lenity in dealing with Mr. Eisenberg's protracted disregard of the court's orders. We remind Mr. Eisenberg that, although he is entitled to an impartial arbiter, he is not entitled to disobey court orders because he disagrees with them. His evident disappointment at having to return Ms. Swain's wages does not diminish the legality of the court's order; nor is it a justification for lobbing baseless accusations against a Superior Court judge.

## IV.

Mr. Eisenberg argues that the trial court erred in denying his motion to join Ms. Swain's bankruptcy attorney, Mr. Moses, in the underlying breach of contract action. According to Mr. Eisenberg, Mr. Moses should have been joined as a party because he and Ms. Swain "conspired to defraud [Mr. Eisenberg] of moneys they knew were not dischargeable through bankruptcy." Mr. Eisenberg does not assert that the trial court was required to join Mr. Moses under Super. Ct. Civ. R. 19, but that it erred in not joining him under Super. Ct. Civ. R. 20, governing permissive

joinder. Rule 20 allows for the joinder of a defendant where any "right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Super. Ct. Civ. R. 20(a)(2). Superior Court Civil Rule 20 is largely identical to Rule 20 of the Federal Rules of Civil Procedure. *See* Super. Ct. Civ. R. 20 cmt.; Fed. R. Civ. P. 20. As with its federal counterpart, we will review rulings on permissive joinder only for an abuse of discretion. *See, e.g.*, *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974) ("[T]he scope of the civil action is made a matter for the discretion of the district court, and a determination on the question of joinder of parties will be reversed on appeal only upon a showing of abuse of that discretion.").

Mr. Eisenberg has not proffered any factual basis tying Mr. Moses to Mr. Eisenberg and Ms. Swain's initial representation agreement, to the settlement agreement, or any other set of events relevant to the original contractual dispute in Superior Court. As the trial court noted, the contract dispute was already resolved in Superior Court with a full judgment in Mr. Eisenberg's favor and the case was reopened for the limited purpose of addressing the discharge of debt. If Mr. Eisenberg believes he has a non-frivolous claim against Mr. Moses arising out of the

proceedings in bankruptcy court, the proper course of action is to initiate a separate lawsuit. It is no basis to join Mr. Moses in the breach of contract case against Ms. Swain.

## V.

After concluding that Mr. Eisenberg willfully disobeyed a court order, Judge Pan indicated on the record that she would refer the matter to the Office of Disciplinary Counsel. In his briefing to this court, Mr. Eisenberg disputes Judge Pan's decision to submit a complaint to bar counsel, the propriety of her providing a copy of the complaint to Ms. Swain, and the merits of the complaint. Because the complaint is external to the proceedings in Superior Court and not directly appealable to this court, we decline to address Mr. Eisenberg's arguments.

We note, however, that Judge Pan was on firm ground when concluding that she was "obligated to refer this matter to the Disciplinary [Counsel] of the Bar." Under Rule 2.15(B) of the D.C. Code of Judicial Conduct, "A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform" Disciplinary Counsel. Mr. Eisenberg's willful and protracted disobedience of the court's orders

meets that standard.[8]  *See* D.C. Rules of Prof'l Conduct R. 8.4 cmt. 2 ("failure to obey court orders" constitutes conduct that "seriously interferes with the administration of justice" per Rule 8.4(d)).  Judge Pan was right to bring her well-founded concerns to Disciplinary Counsel's attention.

The Superior Court's judgment is

*Affirmed.*

---

[8]  Mr. Eisenberg's concerning behavior has extended to his appellate briefing. As a small sample of his briefing tactics, Mr. Eisenberg's reply brief berates Ms. Swain, who filed a one-page pro se responsive brief, for misspelling his name as "Isenberg."  He openly queries whether she is "simply being rude" or worse yet, whether she is "simply being sexist, racist, Anti-Semitic or in some combination," concluding that her infelicity "should not be tolerated in this Court."  So heavily freighting a simple misspelling with discriminatory intent, while well short of contemptuous behavior, exceeds the bounds of zealous advocacy.